UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CIT BANK, N.A.,

              Plaintiff,

  -against-

SHARON ZISMAN, BEREL ZISMAN, NEW YORK CITY DEPARTMENT OF FINANCE, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD,

              Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
17-CV-02126 (CBA) (RER)

**AMON, United States District Judge:**

       Plaintiff CIT Bank, N.A. ("CIT") brought this foreclosure action against Sharon Zisman, Berel Zisman, the New York City Department of Finance, and the New York City Environmental Control Board on April 7, 2017. (Docket Entry ("D.E.") # 1 ("Compl.").) CIT and the Zismans have cross-moved for summary judgment. For the reasons stated below, the Court (1) grants the Zismans' motion for summary judgment, (2) denies CIT's motion for summary judgment, and (3) grants in part and denies in part the Zismans' counterclaim for attorneys' fees.

## BACKGROUND

       The subject of this action is a mortgaged property located at 4414 10th Avenue, Brooklyn, New York (the "Property"). The Property is owned by Berel Zisman, a resident of Surfside, Florida, and Sharon Zisman, a resident of New York, New York. (D.E. # 52-11 ("Pl. 56.1.") ¶ 2–4.)

       On April 11, 2006, the Zismans obtained a mortgage loan from First Meridian Mortgage in the principal amount of $595,100, memorialized in a promissory note (the "Note") executed by Berel Zisman and secured by a mortgage (the "Mortgage") executed by both Zismans. (D.E. # 52-2 ("Brooks Aff.") ¶¶ 4–5, Exs. 2–3.) An allonge to the Note includes an indorsement by First

1

Meridian Mortgage to IndyMac Bank F.S.B, as well as a blank indorsement by IndyMac Bank F.S.B. (Brooks Aff. Ex. 2.)

On April 30, 2009, IndyMac commenced a foreclosure action on the Note and Mortgage in the Supreme Court, Kings County, titled <u>IndyMac Federal Bank, FSB v. Berel Zisman and Sharon Zisman et al.</u>, Index No. 10559/2009 (the "State Court Action"). (D.E. # 53-12.) On or about June 12, 2009, during the pendency of the State Court Action, the Mortgage and Note were assigned from IndyMac to OneWest Bank, the former name of CIT. (D.E. # 53-11 at 103:20–104:4.) In a February 23, 2010 affidavit submitted in the State Court Action, Erica A. Johnson-Seck, the Vice President of OneWest Bank, realleged the allegations in IndyMac's complaint and declared, <u>inter alia</u>, that "the plaintiff hereby elects to call due the entire amount secured by the mortgage described in previous paragraphs." (D.E. # 53-9 ("Defs. Ex. F") ¶¶ 5, 5(g).) On May 16, 2016, the State Court Action was dismissed in favor of the Zismans, pursuant to a stipulation signed by the state court judge ordering "that Defendant's SJ Motion is granted without opposition." (D.E. # 53-10.) In that summary judgment motion, the Zismans argued that IndyMac did not have standing to foreclose because (1) IndyMac ceased to exist on March 19, 2009, and the State Court Action was not commenced until April 30, 2009; and (2) IndyMac was never properly assigned the Note. (D.E. # 53-13 ("Defs. Ex. J") at 8, 11–14.[1])

On January 1, 2011, the Zismans defaulted under the terms of the Note and the Mortgage by failing to make the monthly installment payment due that day, and all payments due thereafter. (Brooks Aff. ¶¶ 8–9.) On August 29, 2016, thirty-day notices of default were sent to the Zismans at the Property address by first-class mail and certified mail. (Brooks Aff. ¶ 10, Ex. 4.) On August

---

[1] Pagination is based on the PDF page number, not the page number of each individual document within the docket entry.

2

30, 2016, ninety-day pre-foreclosure notices were sent to the Zismans at the Property address by first-class mail and certified mail. (Brooks Aff. ¶ 11, Ex. 5.)

On April 7, 2017, CIT commenced this action. (Compl.) CIT possessed the original indorsed Note on that date. (Brooks Aff. ¶¶ 7, 16.)

## STANDARD OF REVIEW

Summary judgment is appropriate "only if the pleadings, the discovery and the disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Dufort v. City of New York, 874 F.3d 338, 347 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). In applying this standard, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Id. (quoting Estate of Gustafson ex rel. Reginella v. Target Corp., 819 F.3d 673, 675 (2d Cir. 2016)). Where, as here, the parties have cross-moved for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 174 (2d Cir. 2014) (quoting Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)). And where a plaintiff moves for summary judgment to challenge the sufficiency of an affirmative defense, on which a defendant bears the burden of proof at trial, the plaintiff may satisfy its burden by pointing to an absence of evidence to support an essential element of the affirmative defense. F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994).

## DISCUSSION

CIT moves for summary judgment against the Zismans on its foreclosure claim and on the Zismans' affirmative defenses, and seeks the appointment of a referee to compute the sums due to

3

CIT and to determine whether the Property may be sold in one parcel. (D.E. # 52-10 ("Pl. Mem.") at 1.) The Zismans move for summary judgment dismissing the action on the grounds that it is barred by the statute of limitations and collateral estoppel. (D.E. # 53-1 ("Defs. Mem.") at 1–3.) They also move for summary judgment on their counterclaim to recover legal fees incurred in defending this action and the State Court Action. (Id.) The Court addresses CIT's foreclosure claim and the Zismans' affirmative defenses in turn.

### I.  Mortgage Foreclosure

In a New York mortgage foreclosure action, a plaintiff establishes a prima facie case by "producing evidence of the mortgage, the unpaid note, and the defendant's default." Gustavia Home, LLC v. Rutty, 720 F. App'x 27, 28 (2d Cir. 2017). If the defendant challenges the plaintiff's standing, "the plaintiff must prove its standing as part of its prima facie showing," which it may do by showing that "it is the holder or assignee of the underlying note at the time the action is commenced." Wells Fargo Bank, N.A. v. Lewczuk, 61 N.Y.S.3d 244, 246 (2d Dep't 2017). Once the plaintiff establishes a prima facie case, it has a presumptive right to foreclose and is entitled to judgment. Gustavia Home, LLC v. Bent, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018). "The burden then shifts to the defendant to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." Id. at 414–15.

CIT has established its prima facie case for mortgage foreclosure: it has produced copies of the Mortgage executed by the Zismans and the Note executed by Berel Zisman, (Brooks Aff. Ex. 2–3), and evidence of the Zismans' default beginning on January 1, 2011, (id. ¶¶ 8–9). In addition, CIT has established standing: it submitted (1) the affidavit of Tenisa Brooks—an Assistant Secretary of LoanCare, LLC, the servicer for CIT—averring that CIT held the Note at the time this action was commenced, and (2) a copy of the Note containing an indorsement from

4

First Meridian Bank to IndyMac and an indorsement in blank from IndyMac. (Brooks Aff. ¶¶ 1, 7, 16–17; Ex. 2); see Lewczuk, 61 N.Y.S.3d at 246 (Plaintiff Wells Fargo established prima facie standing by "submitting the affidavit of its vice president, who averred that the plaintiff was the holder of the consolidated note and the consolidated mortgage at the time of commencement of the action, along with a copy of the consolidated note containing an endorsement from BNY, the originator of the consolidated note, to Alliance Mortgage Company (hereinafter Alliance), and an endorsement in blank from Alliance."). The Zismans do not dispute any of these facts. (See D.E. # 54-1.) Therefore, CIT is presumptively entitled to foreclose, unless the Zismans can establish a triable issue of fact or their entitlement to judgment on any affirmative defense.

## II.  Statute of Limitations

The first affirmative defense asserted by the Zismans is that CIT's action is time-barred. A mortgage foreclosure action is subject to a six-year statute of limitations. See New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 213(4). It is well settled that "once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt." See, e.g., U.S. Bank Nat'l Ass'n v. Sopp, 95 N.Y.S.3d 261, 261 (2d Dep't 2019) (internal quotation marks omitted).

Here, the parties do not dispute that a six-year limitations period applies, nor do they dispute that IndyMac's commencement of the State Court Action was ineffective to accelerate the debt. The parties instead dispute whether an affidavit filed by OneWest in the State Court Action on February 23, 2010 constituted a valid acceleration, thereby starting the clock on the statute of limitations. The Zismans contend that this affidavit was a valid acceleration, and that the instant action—which was commenced over six years later on April 7, 2017—is therefore untimely. (Defs. Mem. at 3–11.) CIT counters that the affidavit was not a valid acceleration and that the

5

statute of limitations did not begin to run until this action was commenced. (D.E. # 55 ("Pl. Opp'n") at 1–4.)

  A. Legal Standard

"[A]cceleration must consist of either notice of election to the Mortgagor or of some unequivocal overt act (such as initiating a foreclosure suit) manifesting an election in such a way as to entitle the mortgagor, if he desires, to discharge the principal of the mortgage." United States v. Alessi, 599 F.2d 513, 515 n.4 (2d Cir. 1979). "To be effective, the acceleration notice to the borrower must be clear and unequivocal." Milone v. US Bank Nat'l Ass'n, 83 N.Y.S.3d 524, 529 (App. Div. 2018).

New York state courts have held that a statement of acceleration is not "clear and unequivocal" where it merely asserts that acceleration may occur in the future. See, e.g., Bank of New York Mellon v. Maldonado, 97 N.Y.S.3d 162 (2d Dep't 2019) (holding that correspondence was not a valid acceleration where it advised as to default and stated that if payment was not forthcoming, acceleration would result); U.S. Bank Nat'l Ass'n v. Greenberg, 97 N.Y.S.3d 133 (2d Dep't 2019) (same); Sopp, 95 N.Y.S.3d at 261 (same); Goldman Sachs Mortg. Co. v. Mares, 23 N.Y.S.3d 444 (3d Dep't 2016) (same); FBP 250, LLC v. Wells Fargo Bank, Nat'l Ass'n, 85 N.Y.S.3d 177 (2d Dep't 2018) (holding that letter discussing acceleration as a possible future event was not a valid acceleration); Pidwell v. Duvall, 815 N.Y.S.2d 754 (3d Dep't 2006) (holding that letter was not a valid acceleration where it advised that if the borrower did not remit certain payments in the future, the entire balance of the mortgage would be called due and payable). New York courts have also found statements of acceleration to be unclear or equivocal under the following circumstances: the statement merely asked when past due taxes would be paid and referred to the acceleration clause in the mortgage, Norbant Realty Corp. v. A.C. Oaks, Inc., 116

N.Y.S.2d 215 (Sup. Ct. 1952); the statement requested that payments henceforth be made promptly, Lapidus v. Kollel Avreichim Torah Veyirah, 451 N.Y.S.2d 958 (Sup. Ct. 1982); the statement did not clearly advise that all sums due pursuant to the note and mortgage were being declared immediately due and payable, Chase Mortg. Co. v. Fowler, 721 N.Y.S.2d 184 (4th Dep't 2001); and the statement advised that monthly payments due were not made and that counsel had been retained "to exercise all of [the servicer's] rights and remedies . . . , including, but not limited to, the right to sell the . . . premises at public sale," Bank of Am. v. Luma, 69 N.Y.S.3d 170 (3d Dep't 2017).

    B. Application

Here, the Zismans contend that the filing of the affidavit effected an acceleration because it was an "'unequivocal overt act (such as initiating a foreclosure suit) manifesting an election in such a way as to entitle the mortgagor, if he desires, to discharge the principal of the mortgage.'" (See Defs. Mem. at 5–6 (quoting Alessi, 599 F.2d at 515 n.4); Defs. Opp'n at 5 (quoting same).) They point to the following acceleration language found in the affidavit:

> That as alleged in paragraph SEVENTH of the complaint, the defendants BEREL ZISMAN & SHARON ZISMAN have failed and neglected to comply with the conditions of mortgage(s), bond(s) or note(s) by omitting and failing to pay items of principal and interest or taxes, assessments, water rates, insurance premiums, escrow and/or other charges, all as more fully appears in "Schedule E of the Summons and Complaint" and accordingly <u>the plaintiff hereby elects to call due the entire amount secured by the mortgage</u> described in previous paragraphs.

(Defs. Ex. F ¶ 5(g) (emphasis added).) The affidavit concludes with OneWest's prayer for relief: the "deponent [OneWest's vice president] respectfully prays for an order . . . directing the entry of summary judgement in its favor, appointing a referee to compute the amount due, [and] amending the caption to substitute OneWest Bank FSB as plaintiff in place and stead of IndyMac Federal Bank, F.S.B. . . . ." (Id. at 11.)

7

The filing of this affidavit on the record in the State Court Action, in which the Zismans were the defendants, was an "unequivocal overt act" manifesting CIT's (then-OneWest's) election to accelerate. Further, the above-quoted language is a "clear and unequivocal" acceleration, as those terms are understood under New York law. The affidavit does not, for example, refer to a potential future acceleration or merely request that payments be made promptly; rather, it clearly and unequivocally calls immediately due and payable the entire amount secured by the Zismans' Mortgage. Thus, the affidavit filed on February 23, 2010 constituted a valid acceleration, starting the running of the statute of limitations. For the reasons stated below, CIT fails to provide any persuasive argument to the contrary.

C. CIT's Counterarguments

First, CIT appears at certain points in their briefing to suggest that the filing of an affidavit cannot be a valid acceleration because an acceleration can occur only via (1) commencement of a foreclosure action or (2) a notice of default and acceleration sent to the borrower. (See Pl. Opp'n at 3 (noting that "[c]ourts have deemed accelerations valid where a notice of default was sent to the borrower stating the loan was being accelerated, and when a foreclosure action was commenced." (citations omitted)).) But the relevant case law does not so hold. See, e.g., Milone, 83 N.Y.S.3d at 529 (noting that "[a]n acceleration of a mortgage debt may occur in different ways" and listing three possible ways); Alessi, 599 F.2d at 515 n.4 ("[A]cceleration must consist of either notice of election to the Mortgagor or of some unequivocal overt act (such as initiating a foreclosure suit) manifesting an election in such a way as to entitle the mortgagor, if he desires, to discharge the principal of the mortgage." (emphasis added)); 446 W. 44th St. v. Riverland Holding Corp., 44 N.Y.S.2d 766, 767–68 (App. Div. 1943) (noting that an election to accelerate "must consist either of notice of election to the mortgagor or of some unequivocal overt act manifesting

8

an election" and concluding that plaintiff did not accelerate because it failed to "notify the defendant that it had elected to declare due the entire principal nor did it disclose by any other overt act its election to accelerate the date of maturity." (emphasis added)). As noted above, the Zismans argue here that the filing of the affidavit was an "unequivocal overt act" manifesting OneWest's election to accelerate, and the caselaw does not provide that commencement of a foreclosure action is the sole means by which such an "unequivocal overt act" can be accomplished.

CIT further argues that the affidavit's election to accelerate was not "clear and unequivocal" for three reasons: (1) it was "simply a reallegation of the acceleration language contained in the complaint" filed by IndyMac in the State Court Action, which was itself invalid; (2) it states that "plaintiff is accelerating the debt," but the plaintiff in the State Court Action was IndyMac, not OneWest; and (3) it "did not properly provide notice" to the Zismans. (Pl. Opp'n at 3–4.) Each of these arguments is addressed in turn.

    1. Reallegation of Acceleration Language in the Complaint

CIT's contention that the affidavit's statement of acceleration is not clear and unequivocal because it is "simply a reallegation of the acceleration language contained in the [original] complaint," which was invalid, (id. at 3), is without merit. Although the affidavit does reallege the allegations in IndyMac's complaint, the deponent—i.e., OneWest's vice president—"affirm[ed] that all allegations contained in the complaint, were at the time that the complaint was verified, and are at this time [of the swearing of the affidavit], true and accurate." (Defs. Ex. F ¶ 4.) Moreover, the affidavit was submitted by OneWest in support of an order directing, inter alia, summary judgment in the deponent's favor and formal substitution of OneWest as plaintiff in IndyMac's place. (Id. at ¶ 1, and at p. 11.) Thus, the affidavit did not simply reallege the

9

complaint's acceleration but rather, via clear and unequivocal language, sought to independently accelerate the entire amount secured by the Mortgage for OneWest's benefit.  Cf. DLJ Mortg. Capital, Inc. v. Pittman, No. 506702/13, 2014 WL 4652894, at *3 (N.Y. Sup. Ct. Sep. 19, 2014) (holding that an affidavit filed in a mortgage foreclosure action did not constitute an independent, valid acceleration where the affiant merely "recited the factual history of the action" which included its prior election to accelerate the mortgage), aff'd DLJ Mortg. Capital, Inc. v. Pittman, 56 N.Y.S.3d 120 (2d. Dep't 2017).

      2.  Reference to "Plaintiff"

CIT next asserts that the acceleration in the affidavit was not clear and unequivocal because it states that "plaintiff is accelerating the debt," and the plaintiff in the State Court Action was IndyMac, not OneWest.  This argument is also unpersuasive.

Under N.Y. C.P.L.R. § 1018, an assignee of a mortgage can continue an action in the name of the original mortgagee, even in the absence of a formal substitution.  See, e.g., Wells Fargo Bank, N.A. v. Eitani, 47 N.Y.S.3d 80, 87 (2d Dep't 2017); Woori Am. Bank v. Glob. Universal Grp. Ltd., 20 N.Y.S.3d 597, 598–99 (2d Dep't 2015) (citing N.Y. C.P.L.R § 1018 and stating that "in the event that a note and mortgage are validly assigned to a third party subsequent to the commencement of a foreclosure action, as was the case here, the assignee can continue an action in the name of the original mortgagee, even in the absence of a formal substitution").  Here, the affidavit, in its first paragraph, identifies OneWest as IndyMac's "successor-in-interest," (Defs. Ex. F ¶ 1), and is expressly submitted in support of OneWest's motion for formal substitution as plaintiff, (id. ¶ 1 and at p. 11).  In this context, the fact that the affidavit states that the "plaintiff hereby elects to call due the entire amount secured by the mortgage," (Defs. Ex. F ¶ 5(g)), does not render the statement of acceleration unclear or equivocal.

10

3. Improper Notice

CIT's final argument is that the acceleration in the affidavit "did not properly provide notice" to the Zismans. (Pl. Opp'n at 3–4.) CIT contends that notice was not provided here because (1) the affidavit would have been served on the Zismans' attorneys in the State Court Action rather than on the Zismans themselves, and (2) the acceleration language is found in paragraph 5(g) of a fifteen-paragraph, eleven-page affidavit. (Id.)[2]

CIT's first notice argument suggests that CIT may have misconstrued the Zismans' acceleration argument. Rather than arguing that the affidavit effected an acceleration because it was itself an acceleration notice transmitted to the borrower, the Zismans in fact argue that the filing of the affidavit effected an acceleration because it was an "unequivocal overt act (such as initiating a foreclosure suit) manifesting [OneWest's] election" of acceleration. (See Defs. Mem. at 5–6 (quoting Alessi, 599 F.2d at 515 n.4); D.E. # 56 ("Defs. Opp'n") at 5 (quoting same).) CIT points to no caselaw suggesting that an acceleration effected via an "unequivocal overt act (such as initiating a foreclosure suit)" must be served on the mortgagor personally. And indeed, as the Zismans point out, recent caselaw suggests it need not be. Specifically, in Beneficial Homeowner Service Corporation v. Tovar, the Appellate Division held as follows:

> Contrary to the plaintiff's contention, the fact that the 2007 action was dismissed as against the defendant homeowner for failure to effectuate personal service does not invalidate the plaintiff's election to exercise its right to accelerate the maturity of debt. The fact of election should not be confused with the notice or manifestation of such election. Nothing in the parties' agreement provides that the plaintiff's election is not valid until the defendant homeowner receives notice thereof. Consequently, the failure to properly serve the summons and complaint upon the defendant homeowner did not as a matter of law destroy the effect of the sworn statement that the plaintiff had elected to accelerate the maturity of the debt.

---

[2] CIT also notes, in the paragraph in which it discusses notice, that the affidavit realleges the acceleration clause from the original complaint. (Pl. Opp'n at 3.) To the extent this is a separate notice argument, it is addressed in Part II.C.1 of the Memorandum and Order, supra.

55 N.Y.S.3d 59, 60–61 (2d Dep't 2017) (internal quotation marks and citations omitted).[3]

Finally, it is unclear why the affidavit being filed in an action in which the Zismans were defendants would not provide notice of the acceleration. Indeed, as the Zismans point out, "an acceleration contained in a sworn affidavit submitted to the court . . . and formally served on [the borrower's] counsel certainly provides notice to the borrower." (Defs. Opp'n at 4.) Similarly, it is not clear why the particular placement of the acceleration language within the affidavit—i.e., in paragraph 5(g)—should render the acceleration invalid, nor does CIT provide any authority in support of this argument. In sum, CIT's arguments regarding notice are unavailing.

\* \* \*

For all of the reasons stated above, the February 23, 2010 affidavit filed in the State Court Action effected a valid acceleration, thereby triggering the applicable statute of limitations. Because the affidavit was filed more than six years before CIT brought the instant federal action, this action is untimely. Having prevailed under their statute of limitations affirmative defense, the Zismans' second affirmative defense—collateral estoppel—need not be reached.

### III. Remaining Matters Pertaining to the Zismans

#### A. Remaining Affirmative Defenses

CIT also moves for summary judgment on and to strike the Zismans' remaining affirmative

---

[3] Unlike in Tovar, where "[n]othing in the parties' agreement provide[d] that the plaintiff's election [of acceleration] is not valid until the defendant homeowner receives notice thereof," 55 N.Y.S.3d at 60–61, here, the terms of the Zismans' Mortgage do require some notice prior to an acceleration. Specifically, the Mortgage provides that the debt may be accelerated only if a default notice is first given to the Zismans, (Brooks Aff., Ex. 3 ¶ 22), and that such notice will be "considered given to [the Zismans] when mailed by first class mail or when actually delivered to [the Zismans'] notice address if sent by other means, (id. ¶ 15). But there is no suggestion that such notice was not in fact provided to the Zismans prior to OneWest's filing of the affidavit, and in fact, the affidavit avers that proper notice was provided. (See Defs. Ex. F ¶ 6 ("[A]ll notices of default as required in the mortgage have been sent as prescribed in the mortgage. A copy of the Notice of Default was mailed to defendant on January 9, 2009.").)

12

defenses.[4]  (Pl. Mem. at 5–26.)  The Zismans' opposition brief is silent on the remaining affirmative defenses, and at oral argument, counsel for the Zismans confirmed that the Zismans do not seek to press any of those affirmative defenses.  The Court therefore deems those affirmative defenses abandoned and dismisses them.[5]  Accordingly, CIT's motion for summary judgment on and to strike those affirmative defenses is denied as moot.

B.  Counterclaim for Attorneys' Fees

The Zismans also move for summary judgment on their counterclaim to recover attorneys' fees incurred in defending this action and the State Court Action pursuant to New York Real Property Law ("N.Y. R.P.L.") § 282.  Under N.Y. R.P.L. § 282, when a mortgage on residential real property provides that the mortgagee may recover attorneys' fees as a result of the mortgagor's default, the mortgagor can recover attorneys' fees for a successful defense of a foreclosure action.  The attorneys' fees may be recovered "in an action commenced against the mortgagee or by way of counterclaim in any action or proceeding commenced by the mortgagee against the mortgagor."  N.Y. R.P.L. § 282.  In order to collect attorneys' fees, the mortgagor must be the "prevailing party" in the foreclosure action.  Bank of Am., N.A. v. Destino, 29 N.Y.S.3d 56, 57 (2d Dep't 2016).

Here, the Zismans' Mortgage provides that "[i]f any lawsuit for Foreclosure and Sale, Lender will have the right to collect all . . . reasonable attorneys' fees."  (Brooks Aff., Ex. 3 ¶ 22.)  Accordingly, because the Zismans were successful in the instant action, they may recover

---

[4] The Zismans' remaining affirmative defenses are: (1) plaintiff is not the lawful owner and holder of the Note and Mortgage, (2) res judicata, (3) failure to serve a proper notice of default, (4) failure to provide the requisite cure period for the alleged default, (5) breach of mortgage terms, (6) laches, (7) failure to comply with statutory prerequisites, (8) waiver and estoppel, (9) invalid assignment of the mortgage, (10) a predecessor only held the mortgage as nominee and lacked authority to assign to CIT, (11) lack of subject matter jurisdiction because there is no diversity of citizenship, and (12) failure to state a claim. (See D.E. # 36 ¶¶ 9–17, 19–30.)

[5] The Zismans' challenge to subject matter jurisdiction cannot be waived, All. of Am. Insurers v. Cuomo, 854 F.2d 591, 605 (2d Cir. 1988), but the Court concludes, on the record before it, that it has subject matter jurisdiction based on complete diversity of the parties.  The Zismans do not dispute that CIT is a citizen of California and that Defendants are citizens of New York and Florida.  (Pl. 56.1 ¶¶ 1–3); see also OneWest Bank, N.A. v. Melina, 827 F.3d 214, 219 (2d Cir. 2016) ("[A] national bank is a citizen only of the state listed in its articles of association as its main office.").

attorneys' fees incurred in defending this action pursuant to N.Y. R.P.L. § 282. CIT offers no other counterargument to the Zismans' claim for attorneys' fees in this action except their erroneous prediction that the Zismans should not be awarded attorneys' fees because they "will not prevail in this action." (Pl. Opp'n at 11.)

However, because this Court lacks jurisdiction over the State Court Action, the Court denies the Zismans' request to recover legal fees based on their successful defense of that matter.[6]

## CONCLUSION

For the reasons described above, the Zismans' motion for summary judgment is granted, and CIT's motion for summary judgment is denied. The Court dismisses as abandoned those affirmative defenses on which the Zismans have failed to move or otherwise defend, and denies CIT's motion for summary judgment on and to strike those defenses as moot. Finally, the Zismans' counterclaim to be awarded attorneys' fees in connection with this federal action is granted.

The Clerk of Court is respectfully directed to enter judgment accordingly. Pursuant to Federal Rule of Civil Procedure 54(d), the Zismans may submit a motion which documents the amount of attorneys' fees they believe they are entitled to, with accompanying and contemporaneous time records, no later than 14 days after the entry of judgment.

SO ORDERED.

Dated: April 8, 2020
      Brooklyn, New York                          /s/ Carol Bagley Amon
                                                      Carol Bagley Amon
                                                      United States District Judge

---

[6] CIT also moves for default judgment against the two non-appearing defendants, the New York City Department of Finance and the New York City Environmental Control Board. In light of this Memorandum and Order, CIT's motion for default judgment may be moot. However, if CIT wishes to pursue the motion, CIT shall so advise the Court within fourteen days of entry of this Memorandum and Order.