UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CIT BANK, N.A.,

                Plaintiff,

-against-

SHARON ZISMAN, BEREL ZISMAN, NEW YORK CITY DEPARTMENT OF FINANCE, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
17-CV-02126 (CBA) (RER)

**AMON, United States District Judge:**

        Plaintiff CIT Bank, N.A. ("CIT") brought this foreclosure action against Sharon Zisman, Berel Zisman (together, the "Zismans"), the New York City Department of Finance, and the New York City Environmental Control Board on April 7, 2017. (ECF Docket Entry ("D.E.") # 1 ("Compl.").). The parties cross-moved for summary judgment. On April 8, 2020, I (1) granted the Zismans' motion for summary judgment, (2) denied CIT's motion for summary judgment, and (3) granted in part and denied in part the Zismans' motion for attorneys' fees, pursuant to New York Real Property Law ("RPL") § 282. (D.E. # 61 (the "M&O").) Judgment was entered on April 9, 2020. A more detailed factual background of these proceedings is provided in that M&O, and familiarity with the background and underlying facts is here presumed.

        On April 20, 2020, CIT filed a notice of appeal with the Second Circuit, appealing from the adverse summary judgment ruling.[1] On April 23, 2020, pursuant to Local Civil Rule 6.3, CIT filed a motion before me seeking (1) reconsideration of that portion of the April 8 order granting attorneys' fees to Defendants; and (2) in the alternative, a stay on that portion of the order awarding

---

[1] The Second Circuit has stayed that appeal pending the resolution of the instant motions. (D.E. # 77.)

the Zismans' attorneys' fees pending disposition of CIT's appeal. (D.E. # 67.) According to CIT, the Defendants were required by state law to file a counterclaim in order to obtain fees, and the Court overlooked the material fact that Defendants had <u>not</u> filed such a counterclaim. Defendants opposed the motion and the parties submitted briefing on the issue. Additionally, on June 17, 2020, Defendants cross-moved for alternate relief, requesting that—should I grant Plaintiff's motion to reconsider the granting of Defendants' fees motion based upon a pleading deficiency—Defendants be given leave to amend their answer to assert a counterclaim for fees. (D.E. # 80.)

For the reasons herein provided, CIT's motion for reconsideration is denied and CIT's motion for a stay pending appeal is denied.

## DISCUSSION

### I.  CIT's Motion for Reconsideration

The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. See <u>Devlin v. Transp. Commc'ns Int'l Union</u>, 175 F.3d 121, 132 (2d Cir. 1999). The standard for granting reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." <u>Analytical Surveys, Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012) (quoting <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995)). To preserve scarce judicial resources, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." <u>Shrader</u>, 70 F.3d at 257. A party is not permitted to "advance new facts, issues or arguments not previously presented to the court" on a motion for reconsideration. <u>Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petrol. Corp.</u>, 948 F.2d 111, 115 (2d Cir. 1991) (internal quotations omitted). "The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original

motion, and that might materially have influenced its earlier decision." In re Facebook, Inc., IPO Sec. & Derivative Litig., 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (internal quotation marks omitted).

CIT argues that its application for reconsideration should be granted because I overlooked that the Defendants' answer did not contain a counterclaim to recover legal fees in this action as required by RPL § 282, and therefore the request for attorneys' fees should have been denied. CIT avers that, if considered, that fact "would have mandated a different result." Bell Sports, Inc. v. Sys. Software Assocs., Inc., 71 F. Supp. 2d 121, 126 (E.D.N.Y. 1999) (quoting Durant v. Traditional Inv'ments, Ltd., 88-cv-9048, 1990 WL 269854 (S.D.N.Y. Apr. 25, 1990)). Finally, CIT claims this is not a "new fact" it is bringing to my attention; rather, the fact the Defendants did not counterclaim for fees was "put before the Court because the Defendants' answer was filed with the Court and was attached to the Zisman Defendants' Cross-Motion for Summary Judgment." (D.E. # 67-2 at 5.)

Notably, CIT is raising this argument for the first time in the motion for reconsideration. Although the Defendants expressly argued at summary judgment that they would be entitled to fees on their counterclaims, (D.E. # 53-1 at 19), CIT did not then point out the fact that the Defendants' answer in the federal action had no such counterclaim. Rather, CIT argued that the Defendants were not entitled to fees simply because they could not prevail on the merits. (D.E. # 55 at 10–12.) Even crediting CIT's present contention that the Defendants' failure to counterclaim is not a "new" fact, it is indisputably a new argument that CIT could have raised before and did not. A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, Inc., 684 F.3d at 52 (internal quotation marks omitted). Nevertheless,

for the sake of completeness, and because Defendants fail to point out that the motion was improper for raising new arguments, I will turn to the merits of CIT's motion.

Defendants do not dispute that their answer did not contain a counterclaim for fees. Instead, Defendants challenge the reconsideration motion on two grounds, arguing that: (1) RPL § 282 does not require that Defendants have filed a counterclaim in order to receive attorneys' fees under that provision; and (2) if § 282 does have such a counterclaim requirement, it is displaced by Federal Rule of Civil Procedure 54.  I address these arguments in turn.

### A. <u>Whether Defendants Were Required under RPL § 282 to Bring a Counterclaim</u>

RPL § 282 provides that:

> Whenever a covenant contained in a mortgage. . . shall provide that in any action or proceeding to foreclose the mortgage that the mortgagee may recover attorneys' fees and/or expenses incurred as the result of the failure of the mortgagor to perform any covenant or agreement contained in such mortgage, or that amounts paid by the mortgagee therefor shall be paid by the mortgagor as additional payment, there shall be implied in such mortgage a covenant by the mortgagee to pay to the mortgagor the reasonable attorneys' fees and/or expenses incurred by the mortgagor . . . in the successful defense of any action or proceeding commenced by the mortgagee against the mortgagor arising out of the contract, and <u>an agreement that such fees and expenses may be recovered as provided by law in an action commenced against the mortgagee or by way of counterclaim in any action or proceeding commenced by the mortgagee against the mortgagor</u>.

N.Y. RPL § 282(1) (emphasis added).

The mortgage at issue provided for the recovery of attorneys' fees by the mortgagee. Accordingly, New York law implies the reciprocal right to the mortgagor.  CIT does not challenge that Defendants "successful[ly] defen[ed] an[] action or proceeding commenced by the mortgagee." Accordingly, the parties do not dispute that, if Defendants had brought a counterclaim, they would have been entitled to fees under § 282.

Defendants contend that § 282's own limiting language does not necessarily restrict the scope of that statute to allow fees in <u>only</u> those instances that the statute expressly contemplates—

4

namely, "in an action commenced against the mortgagee or by way of counterclaim in any action or proceeding commenced by the mortgagee against the mortgagor." RPL § 282. That argument is unavailing.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." United States v. Kozeny, 541 F.3d 166, 171 (2d Cir. 2008) (internal quotation marks omitted). "Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." Id. (internal quotation marks omitted). Additionally, it is well-established that statutes should "be read so as to give effect, if possible, to every clause and word of a statute," leaving no term superfluous. Id. (internal quotation marks omitted).

RPL § 282 proceeds in two parts. First, it grants the mortgagor an implied reciprocal right as a matter of law; second, it specifies the procedures by which the mortgagor can enforce that implied right. Reading this statute to mean that fees may be recovered in an action commenced by the mortgagee under the implied reciprocal right by any other non-specified means, including by motion made at the summary judgment stage, would render the counterclaim-language superfluous. Expressio unius est exclusio alterius, another familiar canon of construction, further supports CIT's interpretation. Simsbury-Avon Preservation Society, LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 221 (2d Cir. 2009) (canon instructs that "the mention of one thing implies the exclusion of the other"). Though scarce, case law interpreting RPL § 282 further supports CIT's contention. In Berkshire Bank v. Tedeschi, the court denied a prevailing defendants' request for attorneys' fees under RPL § 282 because the defendant had "not made her request in a counterclaim as required by that section." No. 11-cv-0767 (CFH), 2013 WL 1291851, at *14 (N.D.N.Y. Mar.

5

27, 2013), aff'd, 646 F. App'x 12 (2d Cir. 2016).[2] Finally, the decisions cited by Defendants, e.g., Caracaus v. Conifer Cent. Square Assocs., 68 N.Y.S.3d 225 (N.Y. App. Div. 2017), are inapposite and do not support their suggested interpretation nor undermine the conclusion in Berkshire Bank.

Although the parties appear to have been operating under the assumption that a counterclaim for fees was made in this action, there was no such claim. Reconsideration is not, however, warranted here because Federal Rule of Civil Procedure 54 displaces the state-law counterclaim requirement, leaving intact my judgment that Defendants are entitled to fees.

### B. The Counterclaim Requirement is Displaced by Fed. R. Civ. P. 54

Defendants further argue that reconsideration is not warranted because, even assuming RPL § 282 imposed a counterclaim requirement in these circumstances, that state-law procedural rule is displaced in federal court by Federal Rule of Civil Procedure 54. I agree.

Federal courts sitting in diversity "apply state substantive law and federal procedural law." Hanna v. Plumer, 380 U.S. 460, 465 (1965). Relying on Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393 (2010) (hereinafter "Shady Grove"), Plaintiff, however, rejects the application of Rule 54 here, arguing that the counterclaim requirement is substantive, and that allowing Rule 54 to displace that substantive state law would violate the Rules Enabling Act, 28 U.S.C. § 2072. The issue in Shady Grove was whether a federal court sitting in diversity should apply Federal Rule of Civil Procedure 23 (regarding class actions) or a state law that prohibited certain class actions that Rule 23 would otherwise allow. A court "must first determine whether [the federal rule] answers the question in dispute. If it does, it governs—New York's law notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power. We

---

[2] The Second Circuit did not consider that portion of the district court's decision on appeal, and, in any event, summary orders have no precedential effect.

do not wade into Erie's murky waters unless the federal rule is inapplicable or invalid." Shady Grove, 559 U.S. at 398 (internal citations omitted). Writing for a plurality of four Justices, Justice Scalia further stated that in determining whether a federal rule is valid and displaces a contrary state law, the "substantive nature of [the state] law, or its substantive purpose, makes no difference. Id. at 409 (emphasis in original).

CIT argues that the above-cited reasoning from Justice Scalia's plurality opinion is not controlling precedent from the Shady Grove decision, where Justice Stevens joined the plurality only in the judgment but not in the reasoning. Writing for himself in a separate concurrence that CIT argues is controlling, Justice Stevens wrote that "[a] federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Id. at 423 (Stevens, J., concurring in part). CIT argues that "the Second Circuit has not addressed whether Justice Stevens' opinion controls." (D.E. # 76 at 6). Just last year, however, in La Liberte v. Reid, 966 F.3d 79 (2d Cir. 2020), the Second Circuit addressed Shady Grove and did not identify Justice Stevens's concurrence as the precedential holding. Instead, in considering whether a state law special-dismissal provision was displaced by Federal Rules 12 and 56, the Second Circuit wrote that "[t]he test is whether a Federal Rule of Civil Procedure answers the same question as the [state law]. If so, the Federal Rule governs, unless it violates the Rules Enabling Act." La Liberte, 966 F.3d at 87 (internal alterations and quotations omitted). The La Liberte court neither discussed Justice Stevens's concurrence nor assessed whether the state law was "substantive" in determining whether the federal rules at issue would apply. Rather, and as did Justice Scalia's plurality, the Second Circuit held that the test is "whether a rule really regulates procedure,--the judicial process for enforcing rights and duties recognized by substantive law and

7

for justly administering remedy and redress for disregard or infraction of them." Id. at 88 (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14, (1941)).  The court also favorably cited Abbas v. Foreign Policy Group, LLC, 783 F.3d 1328 (D.C. Cir. 2015), in which then-judge Kavanaugh held that the test articulated in Sibbach, 312 U.S. at 14—i.e., whether the rule really regulates procedure—and not Justice Stevens's concurrence in Shady Grove, controls the analysis.  Abbas, 783 F.3d at 1337.

Accordingly, Federal Rule 54 will displace the state-law counterclaim requirement if the federal rule both (a) answers the same question as the state law; and (b) really regulates procedure and is thus valid under the Rules Enabling Act.  Because both those conditions are met here, Rule 54 applies, not the counterclaim requirement.

The question is whether an entitlement to attorneys' fees must be asserted in a counterclaim.  Federal Rule of Civil Procedure 54 answers the question.  That rule provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(2)(A).  RPL § 282 first provides a right to recover attorneys' fees by virtue of an implied covenant and then requires the mortgagor seeking fees in an action commenced by the mortgagee to assert that right in a counterclaim (or in a separate action commenced against the mortgagee).  That procedural requirement conflicts with Rule 54, which similarly provides the procedure by which a party entitled to fees should vindicate that substantive right, namely, to move the court for fees.  CIT does not suggest any alternative interpretation of Federal Rule 54, see Shady Grove, 559 U.S. at 405 n.7, nor argue that the state and federal rules answer different questions.

Because the two authorities answer the same question, I move to the second step.  CIT argues that applying the federal rule here violates the Rules Enabling Act because, as explained in Justice Stevens's Shady Grove concurrence, it would abridge or modify what is either (a) a state

8

substantive right or (b) a procedural right so intertwined with a state right or remedy that it functions to define the scope of the state-created right. As described above, however, the correct test asks simply whether a federal "rule really regulates procedure,--the judicial process for enforcing rights and duties recognized by substantive law. . . ." La Liberte, 966 F.3d at 88 (internal quotation marks omitted). "So far, the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." Id. (internal quotation marks omitted). Federal Rule 54 plainly "really regulates procedure." The entitlement to collect attorneys' fees is provided here by the state substantive law, which applies in federal court; the procedure of obtaining those fees for a litigant in federal court is by governed federal rules. Because the federal rule here "affect[s] only the process of enforcing litigants' rights and not the rights themselves," id., it is valid and applicable. See also Carnes v. Zamani, 488 F.3d 1057, 1059 (9th Cir. 2007) (internal citation omitted) ("In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law. Fee motions are generally governed by Federal Rule of Civil Procedure 54(d)(2). . . .").

In their cross-motion for summary judgment, Defendants sought attorneys' fees for successfully defending both the former state-court litigation and the instant federal litigation. (D.E. # 53-1 at 2–3.) Although making an errant reference to their "counterclaim"—which did not exist—they specifically moved for fees under RPL § 282. (D.E. #53-1 at 19–20.)[3] In its memorandum in opposition to Defendants' summary judgment motion, CIT grappled with the

---

[3] Following my summary judgment M&O in favor of the Zismans, a judgment was entered, which stated that "pursuant to Federal Rule of Civil Procedure 54(d), the Zismans may submit a motion which documents the amount of attorneys' fees they believe they are entitled to, with accompanying and contemporaneous time records, no later than 14 days after the entry of judgment." (D.E. # 62.) In a timely fashion, the Zismans then noticed and docketed their motion for attorneys' fees, which expressly sought relief under RPL § 282 and provided contemporaneous time records.

9

merits of this request, specifically addressing both of the Defendants' fee requests. (D.E. # 55 at 10–12.)

Because the state-law counterclaim requirement is displaced by a valid federal rule, Defendants' failure to counterclaim in this federal action does not, under these circumstances, present a reason for reconsideration or alteration of my previous conclusion that "because the Zismans were successful in the instant action, they may recover attorneys' fees incurred in defending this action pursuant to N.Y. R.P.L. § 282." (M&O at 13–14.)[4] See Schaad v. Susquehanna Capital Grp., 03-cv-9902 (LTS) (DFE), 2005 WL 517335, at *2 (S.D.N.Y. Mar. 3, 2005) (determining on reconsideration motion that "vacatur of the fee award would be improper even if the factual record were clarified.").

## II. Defendants' Motion for Leave to Amend

In addition to opposing CIT's reconsideration motion, Defendants have also cross-moved for alternate relief, requesting that Defendants be given leave to amend their answer to assert a counterclaim for fees. (D.E. # 80.) CIT opposes this motion for leave. In the alternative to the above-stated basis for denying CIT's motion for reconsideration, I further conclude that Defendants' answer should be amended to reflect a fee counterclaim that was in fact litigated by the parties and adjudicated. For this additional reason, reconsideration is not warranted.

CIT argues that Defendants' motion should be assessed, and rejected, under Federal Rule of Civil Procedure 15(b)—entitled "Amendments During and After Trial"—which provides that

> [w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

---

[4] For the reasons stated in this Memorandum & Order, the Court would adhere to its judgment awarding fees, even if it were to grant reconsideration.

Fed. R. Civ. P. 15(b)(2).

Although the rule expressly applies to amendments "[d]uring and [a]fter [t]rial," Fed. R. Civ. P. 15(b), "some courts have applied Rule 15(b) to conform pleadings to the proof offered at summary judgment." Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 336 n.44 (S.D.N.Y. 2012) (collecting cases); Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000), superseded by statute on other grounds (relying on Rule 15(b) to affirm district court's consideration of inartfully pleaded and belatedly raised issue at summary judgment); Clomon v. Jackson, 988 F.2d 1314, 1323 (2d Cir. 1993) ("[T]he undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15(b).").

Assuming that Rule 15(b) applies here, despite the issue being adjudicated at summary judgment not trial, the pertinent inquiry is whether the issue has "been tried with the express or implied consent of the parties." Hillburn ex rel. Hillburn v. Maher, 795 F.2d 252, 264 (2d Cir. 1986). A district court's decision to grant leave to amend under Rule 15(b) is reviewed for abuse of discretion, id., as is the decision whether the issue has been tried by express or implied consent. Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306, 312 (2d Cir. 1985).

CIT's argument that the pleadings may not be amended under this rule because CIT did not consent to litigate the unpleaded counterclaim is not persuasive. To determine whether the parties implicitly consented to litigating an issue not presented by the pleadings, courts examine whether the parties recognized that the issue had entered the case. Luria Bros. & Co. v. All. Assurance Co., 780 F.2d 1082, 1089 (2d Cir. 1986); Hamilton v. Accu-Tek, 62 F. Supp. 2d 802, 816 (E.D.N.Y. 1999), vacated on other grounds sub nom. Hamilton v. Beretta U.S.A. Corp., 264

11

F.3d 21 (2d Cir. 2001). A significant part of the analysis is "whether the nonmoving party had an opportunity fully to contest the issue." Hamilton, 62 F. Supp. 2d at 816.

The issue of whether Defendants were entitled to fees in this dispute pursuant to a counterclaim under RPL § 282 conspicuously entered the litigation, notwithstanding its absence from the pleadings. The Defendants' summary judgment cross-motion contained a section (in bold typeface) entitled "POINT III DEFENDANTS' COUNTERCLAIMS TO RECOVER LEGAL FEES," wherein Defendants argued that they are "entitled to recover legal fees in connection with defending the Prior Action and, if successful in dismissing this action, in connection with defending this foreclosure action as well." (D.E. # 53-1 at 19.) In CIT's written opposition to Defendants' summary judgment motion, CIT specifically addressed both of the Defendants' fee requests, litigating the issue on the merits.[5] (D.E. # 55 at 10–12.) Aware of the obvious entry of this issue into the litigation, CIT had, and did avail itself of, a "opportunity fully to contest" the newly raised issue. Hamilton, 62 F. Supp. 2d at 816. Accordingly, CIT impliedly consented to litigate the issue. See Myers v. Moore, 326 F.R.D. 50, 62 (S.D.N.Y. 2018) (internal citations, alterations, and quotation marks omitted) ("Consent may be implied from the opposing party's failure to object[,] . . . effective engagement or silent acquiescence."); Ho Myung Moolsan, Co., Ltd. v. Manitou Mineral Water, Inc., 07-cv-7483 (RJH), 2010 WL 4892646, at *13 (S.D.N.Y. Dec. 2, 2010) (emphases added) ("A party[']s implied consent can be found in, for example, actually litigating an issue, prompting witness testimony on the issue, briefing the issue, or raising the issue at oral argument."), aff'd, 501 F. App'x 85 (2d Cir. 2012).

---

[5] Concerning the instant litigation, CIT made no mention of the Defendants' failure to counterclaim. Rather, CIT's "counterargument to the Zismans' claim for attorneys' fees in this action [is] their erroneous prediction that the Zismans should not be awarded attorneys' fees because they 'will not prevail in this action.'" (M&O at 14 (quoting Pl. Opp'n at 11).) See Hamilton, 62 F. Supp. 2d at 816 ("Implied consent exists where the parties recognized during the trial that an unpled issue was being tried.").

CIT argues that it cannot have impliedly consented to litigate the issue because it "objected to Defendant's request for attorney's fees in Plaintiff's opposition to Defendants' motion for summary judgment, filed a motion for reconsideration based on the Court overlooking that Defendants failed to plead a counterclaim for attorney's fees, and is now objecting to Defendants' motion to amend the complaint." (D.E. # 83 at 3.) These arguments miss the mark. Courts have held that when a party objects to the introduction of the unpleaded issue at the time it enters the litigation, it cannot have impliedly consented to that introduction. But that has no bearing on the facts of this dispute. As described above, CIT's objection at summary judgment was not to the introduction of an unpleaded issue; it was an objection on the merits of that introduced issue. Such an objection undermines rather than supports CIT's argument. In Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000), for example, the court held that a "failure explicitly to plead a hostile work environment claim in [plaintiff's] Complaint did not preclude the district court's consideration of that issue on summary judgment" because, in part, opposing counsel "attacked [plaintiff's] claim on the merits" and "did not claim that [plaintiff's] tardiness had disadvantaged [defendant] in any respect." Id. at 569–70. In Cruz, this fact supported the conclusion that the opposing party was not prejudiced by the court's consideration of the non-expressly pleaded claim. Id. Moreover, CIT's reconsideration motion and present objection to Defendants' motion for leave to amend—both of which came after the belatedly introduced fee issue was litigated and reduced to judgment—have no bearing on the backwards-looking implied consent analysis. Fed. R. Civ. P. 15(b); Kuhn v. C.A.B., 183 F.2d 839, 842 (D.C. Cir. 1950) ("If it is clear that the parties understand exactly what the issues are when the proceedings are had, they cannot thereafter claim surprise or lack of due process because of alleged deficiencies in the language of particular pleadings.").

13

Two additional considerations support permitting amendment. First, while fees for defending this litigation were not originally sought via counterclaims in the answer, fees for defending the former dispute (sought under the same statute and for the same mortgage) were. Thus, the de facto counterclaim that was raised and argued on the merits here at summary judgment was closely related to the actual original counterclaim. That counterclaim fees were sought here was not a surprise. Second, "[a]mendment of the pleadings pursuant to Rule 15(b) is a part of the general federal policy of limiting the restrictive effect of historical pleading rules." Hamilton, 62 F. Supp. 2d at 815; see also 6A Charles Alan Wright, Arthur R. Miller, Federal Practice & Procedure § 1491 (3d ed. 2020) (Rule 15(b) is "designed 'to avoid the tyranny of formalism' that was a prominent characteristic of former practice and to avoid the necessity of a new trial"). Allowing a pleading deficiency, here raised at this late hour by CIT, to preclude Defendants from fees to which they are otherwise entitled as a prevailing party, especially where that very issue was already litigated and decided on the merits, would be to extol the very tyranny of formalism that the liberal pleading scheme embodied in Rule 15 was designed to eliminate.

Because I conclude that the unpleaded issue was impliedly consented to, Defendants are "entitled to mandatory amendment of the pleadings." Hamilton, 62 F. Supp. 2d at 816 (citing Hillburn, 795 F.2d at 264).[6]

### III. CIT's Motion for a Stay Pending Appeal

CIT's motion for a stay of that portion of the judgment concluding that Defendants are entitled to attorneys' fee pending appeal is denied.

In considering an application for a stay pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether

---

[6] Even if the rule were permissive rather than mandatory, the circumstances here warrant granting the motion to amend, and I do so in my discretion.

14

the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007).[7] "[T]he degree to which a factor must be present varies with the strength of the other factors." Id.

Concerning the first factor, CIT argues only that because RPL § 282 requires a counterclaim that Defendants failed to make, it has a strong likelihood of succeeding on the merits of its appeal. (D.E. # 67 at 10.) For the reasons provided in this Memorandum & Order, CIT has not made a strong showing that is it likely to succeed on the merits. For one of several alternative reasons provided here, CIT's arguments regarding RPL § 282 are not likely to be persuasive on appeal. As to the second factor, CIT has not shown why the payment of fees, essentially pure economic injury, is irreparable. Traditionally, economic loss is not irreparable because the victim can be made whole with monetary damages. JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990). CIT's bald assertion that there is a risk here the Defendants will not return the money if CIT prevails on appeal is insufficient to show otherwise. The remaining factors also do not weigh in favor of granting a stay.

## CONCLUSION

For these reasons, (1) CIT's motion for reconsideration is denied; (2) Defendants' motion for leave to amend is granted; and (3) CIT's motion for a stay pending appeal is denied.

SO ORDERED.

Dated: March 1, 2020
      Brooklyn, New York              /s/ Carol Bagley Amon
                                              Carol Bagley Amon
                                              United States District Judge

---

[7] Because the stay is denied on these factors, I need not decide the parties' dispute as to whether CIT would be required to post a bond in these circumstances.