Clerk's Office
Filed Date: 11/16/2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CIT BANK, N.A.,

      Plaintiff,

 -against-

SHARON ZISMAN, BEREL ZISMAN, NEW YORK CITY DEPARTMENT OF FINANCE, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD,

      Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
17-cv-2126 (CBA) (RER)

**AMON, United States District Judge:**

  Plaintiff CIT Bank, N.A. ("CIT" or "Plaintiff") moves pursuant to Federal Rule of Civil Procedure 60(b)(1) and (6) to vacate the Court's April 8, 2020 decision (the "April 8, 2020 decision") and subsequent April 9, 2020 judgment (the "April 9, 2020 judgment") in favor of Defendants Sharon Zisman and Berel Zisman (together, the "Zismans" or "Defendants"). (See ECF Docket Entry ("D.E.") # 91-3 ("Pl. Mem.").)[1] CIT's motion is made in light of Freedom Mortgage Corp. v. Engel, 169 N.E.3d 912 (N.Y. 2021), a New York Court of Appeals decision which CIT contends announced a supervening change in controlling law that is inconsistent with the April 8, 2020 decision and April 9, 2020 judgment. The Zismans oppose the motion, arguing that (1) Engel did not announce a change in law that controls in this action; (2) even if it did, that would not here constitute the extraordinary circumstances required for relief under Rule 60(b); and (3) if vacatur were otherwise proper, Defendants should still prevail at summary judgment given their alternative affirmative defenses. (See D.E. # 92 ("Defs. Mem.") at 2, 16.)

  For the reasons that follow, CIT's motion is denied.

---

[1] Plaintiff CIT filed its memorandum in support of its motion to vacate as part of an exhibit at D.E. # 91-3, along with other documents in the same PDF file. Citations to pages in CIT's memorandum are to the pages displayed on that 16-page memorandum, not to pages of the overall PDF.

## RELEVANT FACTS AND PROCEDURAL HISTORY

CIT brought this foreclosure action against the Zismans, the New York City Department of Finance, and the New York City Environmental Control Board on April 7, 2017. (See D.E. # 1.) The parties eventually cross-moved for summary judgment, and on April 8, 2020, I (1) granted the Zismans' motion for summary judgment, (2) denied CIT's motion for summary judgment, and (3) granted in part and denied in part the Zismans' counterclaim for attorneys' fees, pursuant to New York Real Property Law ("RPL") § 282. (See D.E. # 61 ("Apr. 8 Dec'n").) Judgment was entered on April 9, 2020. (D.E. # 62.) A more detailed factual background of these proceedings is provided in my April 8, 2020 decision, and although familiarity with the background and underlying facts is here presumed, I recount certain facts as relevant to the present motion.

On April 11, 2006, the Zismans obtained a mortgage loan from First Meridian Mortgage for a property that the Zismans own in Brooklyn. (See Apr. 8 Dec'n at 1; D.E. # 91-1 ("Monahan Decl.") ¶ 4.) An allonge to the note included an indorsement by First Meridian Mortgage to IndyMac Bank, F.S.B. ("IndyMac"), as well as a blank indorsement by IndyMac. (Apr. 8 Dec'n at 1-2.) The loan was memorialized in a promissory note and secured by a mortgage, both of which were eventually assigned to OneWest Bank ("OneWest"), the former name of CIT. (See id. at 2; Monahan Decl. ¶¶ 4-5.) On April 30, 2009, following default by the Zismans, IndyMac commenced a foreclosure action in New York Supreme Court, titled IndyMac Federal Bank, FSB v. Berel Zisman and Sharon Zisman et al., Index No. 10559/2009 (the "State Court Action"). (Apr. 8 Dec'n at 2; Monahan Decl. ¶ 6.) Following assignment to OneWest, on February 23, 2010 a representative of OneWest filed an affidavit in the State Court Action that realleged all allegations

made in the complaint, and declared, inter alia, that "the plaintiff hereby elects to call due the entire amount secured by the mortgage described in previous paragraphs." (See Apr. 8 Dec'n at 2.)

Just under six years passed after the filing of that affidavit in the State Court Action. Then, on January 29, 2016, the Zismans filed for summary judgment on the grounds that IndyMac had lacked standing to commence the State Court Action, and on February 11, 2016, CIT filed a motion to voluntarily discontinue the State Court Action without prejudice on the same basis.[2] (Monahan Decl. ¶¶ 7-8.) On May 16, 2016, the parties agreed to resolve the motions by stipulating to the Zismans' summary judgment motion being granted and the State Court Action being dismissed. (Id. ¶ 10.) As part of that stipulation, the parties agreed that CIT's discontinuance motion would be withdrawn. (See D.E. # 91-3 at 1.) Thus, the state court never granted CIT's voluntary discontinuance motion.

On April 7, 2017, CIT commenced this subsequent foreclosure action in federal court, (see D.E. # 1), and as relevant here, the parties eventually cross-moved for summary judgment, (see D.E. ## 52, 53). The central question on those cross motions for summary judgment was whether CIT's federal court foreclosure action was time-barred by the statute of limitations. (See Apr. 8 Dec'n at 5-12.) Neither party disputed that a six-year limitations period applied to the action, nor did they dispute that IndyMac's commencement of the State Court Action was ineffective to accelerate the debt. (Id. at 5.) Rather, the dispositive issue was "whether [the] affidavit filed by OneWest in the State Court Action on February 23, 2010 constituted a valid acceleration, thereby starting the clock on the statute of limitations" and rendering "the instant action—which was

---

[2] As noted, IndyMac was the plaintiff in the State Court Action, not CIT. However, OneWest (and thus, CIT) had become the successor-in-interest to IndyMac by purchase through FDIC receivership, (see D.E. # 53-9 ¶ 1), and both parties consider the state court discontinuance motion to have been that of CIT, the Plaintiff in this action. (See Monahan Decl. ¶ 8 ("On February 11, 2016, Plaintiff [CIT] filed a motion to voluntarily discontinue [the State Court Action] . . . ."); Defs. Mem. at 6 ("[I]t is true that the Plaintiff [CIT] had brought a motion to discontinue the prior foreclosure action . . . .").)

3

commenced over six years later on April 7, 2017— . . . untimely." (Id.) In my April 8, 2020 decision, I held that the February 23, 2010 affidavit had constituted a valid acceleration of the debt, and that because more than six years had passed between that date and the initiation of this action, the statute of limitations had run and this action was untimely. (See id. at 5-12.) Accordingly, I denied CIT's motion for summary judgment, granted the Zismans' motion for summary judgment, and awarded attorneys' fees to the Zismans. (Id. at 14.) The clerk entered judgment in line with the foregoing on April 9, 2020. (D.E. # 62.)

On April 20, 2020, CIT filed a notice of appeal with the Second Circuit, appealing from the adverse summary judgment ruling. (D.E. # 63.) Three days later on April 23, 2020, pursuant to Local Civil Rule 6.3, CIT also filed a motion before me seeking (1) reconsideration of that portion of the April 8, 2020 decision and April 9, 2020 judgment granting attorneys' fees to Defendants, or (2) in the alternative, a stay on the attorneys' fees portion of the judgment pending disposition of CIT's appeal of the adverse summary judgment ruling. (See D.E. # 67.) Given that CIT filed its motion for reconsideration of attorneys' fees in this Court, the Second Circuit stayed the summary judgment appeal pending my resolution of the motion for reconsideration of attorneys' fees. (See D.E. # 77 ("Since at least one motion cited in FRAP 4(a)(4) has been filed in the district court, this appeal is stayed pending resolution of the motion(s).").)

On March 1, 2021, I denied CIT's request for reconsideration on the issue of attorneys' fees. (D.E. # 84.) That denial would presumptively have allowed the Second Circuit to lift its stay and proceed with deciding CIT's appeal of the summary judgment ruling, given that the Second Circuit had stayed that appeal "pending resolution of the [reconsideration] motion(s)." (See D.E. # 77.) But the following day, on March 2, 2021, CIT filed a letter in accordance with my Individual Rules seeking a pre-motion conference for a new motion to vacate the April 8, 2020 decision and

4

April 9, 2020 judgment. (See D.E. # 85.) CIT's basis for the motion to vacate—which is the motion now under consideration—was a new decision from the New York Court of Appeals, Engel, 169 N.E.3d 912, that was decided on February 18, 2021, and which CIT contends announced a new rule of law that requires that I vacate my April 8, 2020 decision.

As of the date of this opinion, the Second Circuit has not entered any notice or order addressing the previous stay order or the recent motion to vacate, although it appears to have continued the original stay pending my decision on the present motion. (See D.E. # 97; Docket, CIT Bank, N.A. v. Zisman, No. 20-1314 (2d Cir.).)

## DISCUSSION

### I. Jurisdiction to Decide the Motion

Given the odd procedural posture of this action, I must first determine whether I have jurisdiction to consider the motion and enter the relief sought, i.e., vacatur of my prior decision. The filing of a notice of appeal ordinarily "divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). "[T]his general rule has well-established exceptions[.]" Rudgayzer v. Google, Inc., No. 13-cv-120 (ILG) (RER), 2014 WL 12676233, at *2 (E.D.N.Y. Feb. 10, 2014). The parties agree that I have authority in these circumstances to act pursuant to Federal Rule of Civil Procedure 62.1. (See Defs. Mem. at 15-16; D.E. # 93 ("Pl. Reply") at 11-12.) Rule 62.1 provides that, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer consideration of the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1. Accordingly, whether I retained

5

jurisdiction to consider the motion or jurisdiction is circumscribed by Rule 62.1, I undoubtedly have authority to entertain and deny a 60(b) motion to vacate.

## II. Federal Rule of Civil Procedure 60(b)(1)

### A. Legal Standard

Federal Rule of Civil Procedure 60(b) provides various grounds under which a court may relieve a party from a final judgment. In general, "[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001); see also Nemaizer v. Baker, 793 F.2d 58, 61-62 (2d Cir. 1986). CIT first moves to vacate pursuant to Rule (60)(b)(1). Federal Rule of Civil Procedure 60(b)(1) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect[.]" Such a motion must be made "within a reasonable time—and . . . no more than a year after the entry of the judgment or order . . . ." Fed. R. Civ. P. 60(c)(1).

It is well-established that "mistakes" by the court can be addressed under 60(b)(1), see In re 310 Assocs., 346 F.3d 31, 34-35 (2d Cir. 2003), and the Supreme Court recently held that such "mistakes" encompass a judge's errors of law. Kemp v. United States, 142 S. Ct. 1856, 1861-63 (2022). However, the Supreme Court has not addressed whether such legal "mistakes" under 60(b)(1) only encompass errors under controlling law at the time the court entered judgment (as was the case in Kemp), or whether "mistakes" also encompass decisions by a court that turn out to be erroneous only in retrospect due to a post-judgment change in controlling law (which is what CIT argues is the case here). Initially, I note that there is some authority that suggests that Rule 60(b)(6), which provides a catchall for vacating a judgment for "any other reason that justifies relief," may be the more appropriate vehicle for addressing post-judgment decisions. See Kemp,

6

142 S. Ct. at 1865 (Sotomayor, J., concurring) (clarifying that "nothing in [the Court's opinion] casts doubt on the availability of Rule 60(b)(6) to reopen a judgment in extraordinary circumstances, including a change in controlling law"); id. at 1861 (majority opinion) (noting that 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable"). Nevertheless, there is Second Circuit precedent holding that where "very special facts" are present, an intervening change in decisional law may sometimes be addressed as a "mistake" under Rule 60(b)(1). See Schildhaus v. Moe, 335 F.2d 529, 531 (2d Cir. 1964) (discussing Tarkington v. United States Lines Co., 222 F.2d 358 (2d Cir. 1955)).

In Tarkington, the Second Circuit determined without the benefit of any analysis that Rule 60(b) could be used "to correct a mistake of the court," 222 F.2d at 360, where the trial judge had directed a verdict under then-applicable law that was overturned by the Supreme Court just eleven days after judgment was entered, and where a motion to vacate was made just ten days thereafter. See Schildhaus, 335 F.2d at 531 (discussing Tarkington, 222 F.2d 358).[3] But Tarkington does not stand for a broad rule that decisions which are contrary to subsequent changes in law should always be classified as a "mistake" under Rule 60(b)(1) and vacated on that ground. In Schildhaus, the Second Circuit deemed the short gaps in time which served as the basis for the Tarkington decision to constitute "very special facts." 335 F.2d at 531. The Schildhaus court reasoned:

> Whether relief may be sought under Rule 60(b) for what is merely an error by the court and, if so, for how long beyond the expiration of the ten-day limit set by Rule 59(e) for motions to 'alter or amend a judgment' are not altogether clear. . . . We allowed this to be done in Tarkington . . . , but on very special facts. Eleven days after the entry of a defendant's judgment in that case, correct under the law laid down by this Court, the Supreme Court rendered a decision which showed the judgment to be erroneous; the plaintiff moved under Rule 60(b) ten days thereafter, within the 30-day period allowed for appeal. Under such circumstances there is indeed good sense in permitting the trial court to correct its own error and, if it

---

[3] Tarkington only discussed Rule 60(b) generally, as opposed to Rule 60(b)(1). But because it discussed a "mistake" of the court, it has been viewed as applying to Rule 60(b)(1) cases. See Schildhaus, 335 F.2d at 530-31.

7

refuses, in allowing a timely appeal from the refusal; no good purpose is served by requiring the parties to appeal to a higher court, often requiring remand for further trial proceedings, when the trial court is equally able to correct its decision in the light of new authority on application made within the time permitted for appeal[.]

Id. Thus, although a district court can vacate its prior order based upon new authority under Rule 60(b)(1), it must still do so "only upon a showing of exceptional circumstances," Nemaizer, 793 F.2d at 61, and be guided by the rule that the motion be made "within a reasonable time," Fed. R. Civ. P. 60(c)(1). Schildhaus did not define the outer limit of where the "very special facts" present in Tarkington might lie for purposes of timing, but it did suggest that at the very least, "a reasonable time for making a motion under Rule 60(b) on the basis of judicial error should not exceed that allowed for an appeal." 335 F.2d at 531.

### B. Application

Here, CIT brings its 60(b)(1) motion on the basis that the April 8, 2020 decision and April 9, 2020 judgment are allegedly inconsistent with a post-judgment change in controlling law occasioned by the New York Court of Appeals decision in Engel, 169 N.E.3d 912, entered just over ten months after the April 9, 2020 judgment. For the reasons that follow, I reject CIT's argument and deny its motion under Rule 60(b)(1).

First, the circumstances in the present case do not constitute "very special facts," Schildhaus, 335 F.2d at 531, or "exceptional circumstances," Nemaizer, 793 F.2d at 61, that would warrant relief under Rule 60(b)(1). In this case, CIT sought a pre-motion conference on March 2, 2021 and filed its 60(b) motion on April 26, 2021, over one year after judgment was entered.[4] It

---

[4] CIT's motion to vacate under Rule 60(b)(1) may also be time-barred by rule. As already noted, beyond the requirement that any 60(b) motion be brought "within a reasonable time" (which is the focus of Schildhaus), motions under 60(b)(1) are subject to the additional requirement that they be brought "no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1). CIT's motion was not made until April 26, 2021, (see D.E. # 91), outside the one-year window from the April 9, 2020 judgment. It is true that CIT did seek a pre-motion conference for its anticipated motion within the one-year window, (see D.E. # 85, filed March 2, 2021), and that it served its motion on Defendants within the one-year window, (see D.E. # 89, filed April 5, 2021). The fact remains, however, that the actual motion itself was not made to the Court until outside the permitted window.

8

is true that this motion was made within the time to appeal, but only because the Second Circuit had stayed the appeal pending resolution of CIT's separate motion for reconsideration of attorneys' fees. It still remains the case that Engel was decided over ten months after my April 8, 2020 decision, and the present motion was made over a year after judgment. That significant time gap, attributable to a reconsideration motion on the entirely separate issue of attorneys' fees, does not approach the "very special facts" of Tarkington, where only eleven days had passed between judgment and a supervening Supreme Court decision.

Second, when considering whether special facts or extraordinary circumstances have been shown, I conclude that CIT's argument suffers from more fundamental problems. First, the issue addressed in Engel, deceleration, was never raised before me at summary judgment. It strains credulity that "[t]he ordinary meaning of the term 'mistake' in Rule 60(b)(1)," Kemp, 142 S. Ct. at 1862, would encompass failing to address an issue never raised. Second, in Tarkington and the subsequent district court cases that have vacated judgments as mistakes, it has been clear that the new post-judgment decisions would change the result. In those cases, not only was the intervening change in controlling law one that would have unequivocally changed the court's prior decision, but the intervening case often explicitly overruled a prior precedent that the court had relied on in

---

Furthermore, the failure to timely make the motion is attributable to CIT. In seeking a pre-motion conference, CIT was following Rule 3.A of my Individual Motions Practices and Rules, which provides that "[a] pre-motion conference with the Court is required before making any motions, except: . . . upon notice to the Court, when waiting to file a motion could result in the loss of a right." (Emphasis added.) In its letter request for a pre-motion conference, CIT did not cite or discuss Rule 60(b)(1); rather, it only referenced 60(b) generally and subsection 60(b)(6), (see D.E. # 85), which is not subject to the same one-year time bar as 60(b)(1). I held a hearing on the pre-motion conference and entered a briefing schedule that instructed the anticipated motion be docketed with the Court on April 26, 2021, (see Minute Entry Dated March 22, 2021), and CIT raised no objection to the briefing schedule. The instruction that the motion be filed on April 26, 2021 was entered in conformance with my Individual Motions Practices and Rules 3.D, (see id.), which provides that "no motion papers shall be filed until the motion is fully briefed, provided, however, that, upon notice to the Court, a party may file a motion before briefing is completed if waiting to file until the motion is fully briefed could result in the loss of a right[.]" (Emphases removed and added). Thus, CIT was expressly permitted to file its motion and preserve its right prior to seeking a pre-motion conference and prior to the scheduled date of filing for the motion. CIT did not do so, and there is thus a strong argument to be made that the 60(b)(1) motion is time-barred. Nevertheless, because I hold that 60(b)(1) relief is not warranted in any event, I need not decide the timeliness issue.

reaching the prior decision. In Tarkington itself, the Second Circuit held that 60(b) was appropriate to "correct a mistake of the court" because a supervening Supreme Court decision "had expressly rejected the 'relinquishment of control' doctrine of the Second Circuit expressed in [various Second Circuit cases] . . . on which the trial judge [had] relied in directing a verdict." 222 F.2d at 359-60 (citation omitted); accord Schildhaus, 335 F.2d at 531 (holding that Tarkington consisted of "very special facts" in part because the intervening Supreme Court decision had "showed the [prior] judgment to be erroneous"); see also Pasquino v. Lev Parkview Devs., LLC, No. 09-cv-4255 (LMM), 2011 WL 4502205, at *4 (S.D.N.Y. Sept. 29, 2011) (holding that 60(b)(1) relief was appropriate because the district court had dismissed plaintiffs' complaint "substantially for the reasons set forth by Judge Cote in Bodansky v. Fifth On The Park Condo, LLC," and soon after "the Court of Appeals reversed and vacated the district court's decision in Bodansky, specifically rejecting the district court's interpretation of the very same dispositive provisions of ILSA that applied to this case"). The applicability of Engel to this case is not so clear cut.

Engel addressed "whether a noteholder's voluntary motion or stipulation to discontinue a mortgage foreclosure action, which does not expressly mention [deceleration] or a willingness to accept installment payments, constitutes a sufficiently 'affirmative act'" to establish deceleration as a matter of law, so as to halt the running of the statute of limitations for a debt that had been previously accelerated. 169 N.E.3d at 924. The Engel court acknowledged that a rule had emerged in some New York lower courts "that a noteholder's motion or stipulation to withdraw a foreclosure action, in itself, is not an affirmative act of revocation of the acceleration effectuated via the complaint." Id. at 924-25 (internal quotation marks and citation omitted). Engel overruled these lower court decisions in favor of a "clear rule": "when a bank effectuated an acceleration via the commencement of a foreclosure action, a voluntary discontinuance of that action—i.e., the

10

withdrawal of the complaint—constitutes a revocation of that acceleration." Id. at 926. The import of this rule is that a deceleration can serve to reset the loan, i.e., monthly payments become due and a new limitations period begins with subsequent missed payments.

In light of Engel, CIT now contends that even if the affidavit filed by OneWest in the State Court Action on February 23, 2010 accelerated the Zismans' debt and started the statute of limitations, that acceleration was decelerated as matter of law on February 11, 2016 when CIT voluntarily moved to discontinue the State Court Action, before the limitations period expired. However, there are significant factual differences between Engel and this case.

First, Engel was a consolidated appeal of cases where the debt accelerations at issue were effectuated by the commencement of foreclosure actions. In contrast, I determined at summary judgment that CIT's acceleration in the State Court Action was effectuated by means of a sworn affidavit submitted by the new holder of the note and mortgage, OneWest Bank, which was served and submitted almost a year after the commencement of the State Court Action. (Apr. 8 Dec'n at 8.) In fact, the parties agreed at summary judgment before me that the commencement of the State Court Action was ineffective to accelerate the debt in this case. (Id. at 5.) The Engel decision repeatedly links its holding on deceleration to facts not present here; namely, dismissal of the only action that served to accelerate the debt. See Engel, 169 N.E.3d at 926 ("[W]hen a bank effectuated an acceleration via the commencement of a foreclosure action, a voluntary discontinuance of that action—i.e., the withdrawal of the complaint—constitutes a revocation of that acceleration.") (emphasis added); id. ("A voluntary discontinuance withdraws the complaint and, when the complaint is the only expression of a demand for immediate payment of the entire debt, this is the functional equivalent of a statement by the lender that the acceleration is being revoked.") (emphasis added); id. ("[W]here acceleration occurred by virtue of the filing of a complaint in a

11

foreclosure action, the noteholder's voluntary discontinuance of that action constitutes an affirmative act of revocation of that acceleration as a matter of law . . . .") (emphasis added). That Engel holding arguably would not apply here, where acceleration did not occur by way of initiating the foreclosure action, but by a subsequently filed affidavit explicitly accelerating the loan.

Second, Engel concerned whether a voluntary discontinuance that was effectuated served to decelerate a debt, whereas in the present case no voluntary discontinuance took effect. Here, CIT moved to discontinue the State Court Action on February 11, 2016, but because the Zismans had already answered the complaint, CIT could not unilaterally discontinue by motion—the discontinuance needed to be stipulated to or ordered by the state court, N.Y. C.P.L.R. 3217, neither of which occurred. Indeed, the State Court Action was eventually terminated pursuant to a so-ordered stipulation of the parties—well after the statute of limitations had run—which granted the Zismans summary judgment, and in which CIT in fact withdrew its still-pending motion to discontinue. (See D.E. # 91-3 at 2.) Moreover, the summary judgment motion which was granted was based upon the argument that IndyMac had lacked standing to initiate the State Court Action—not that OneWest's affidavit was somehow invalid. (See D.E. # 53-13.)

Nevertheless, CIT argues that the mere filing of its motion to discontinue on February 11, 2016 should have constituted a deceleration under Engel. In support, CIT highlights language in Engel that presented the issue on appeal as "whether a noteholder's voluntary motion or stipulation to discontinue a mortgage foreclosure action" constituted a valid deceleration. 169 N.E.3d at 924. But Engel repeatedly makes clear that deceleration occurs as a matter of law when the complaint is the accelerant and the complaint is withdrawn. Thus, a motion or stipulation that has the actual effect of withdrawing the complaint is what effectuates the deceleration. Id. at 926 ("[A] voluntary discontinuance of that action—i.e., the withdrawal of the complaint—constitutes a revocation of

12

that acceleration.") (emphasis added); id. ("[T]he noteholder's withdrawal of its only demand for immediate payment of the full outstanding debt, made by the 'unequivocal overt act' of filing a foreclosure complaint, 'destroy[s] the effect' of the election [to accelerate]") (second alteration in original) (citation omitted); id. ("A voluntary discontinuance withdraws the complaint . . . ."). Here, in addition to the fact that the complaint was not the operative document that accelerated the debt, CIT's motion also did not serve to withdraw it. And the stipulation that finally ended the State Court Action not only withdrew that motion, but granted a summary judgment motion based on the distinct issue of IndyMac's standing.

In sum, the present case contains none of the "exceptional circumstances" or "very special facts" that would warrant vacating a judgment.[5]

## III. Federal Rule of Civil Procedure 60(b)(6)

### A. Legal Standard

CIT also moves to vacate pursuant to Rule 60(b)(6). To the extent the above legal background and discussion of Rule 60(b)(1) pertains to Rule 60(b) generally, it is incorporated into my ruling on the 60(b)(6) motion.

Rule 60(b)(6) provides that, "[o]n motion and just terms, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for [one of five enumerated

---

[5] The Second Circuit's opinion in 53rd St., LLC v. U.S. Bank Nat'l Ass'n, 8 F.4th 74 (2d Cir. 2021), a more recent case not addressed by the parties, does not change this analysis. There, the district court had granted summary judgment for plaintiff 53rd Street LLC after finding that U.S. Bank National's letters decelerating their loan did not serve to stop the statute of limitations from running. Id. at 76-77. On direct appeal, the Second Circuit vacated the district court's grant of summary judgment in light of the New York Court of Appeals having decided Engel in the interim. Id. at 82. But 53rd Street did not change any law laid down by Engel, so the above analysis under 60(b)(1) remains unchanged. In addition, 53rd Street contained significant differences from the present case. First, in 53rd Street, the deceleration issue was actually raised in the initial summary judgment motions, and in its decision the district court had relied on the reasoning of a deceleration case that Engel explicitly overruled. Id. at 76. Second, 53rd Street involved a deceleration by way of letters that explicitly decelerated the loan, id., not the mere filing of a voluntary discontinuance motion that 1) the state court never granted, and 2) made no mention of an intent to decelerate, as is the case here.

reasons]; . . . or (6) any other reason that justifies relief." A Rule 60(b)(6) motion must be made "within a reasonable time" but is not subject to the same one-year limitation as motions under Rule 60(b)(1). Fed. R. Civ. P. 60(c)(1). Although 60(b)(6) has at times been characterized as "a grand reservoir of equitable power," see United States v. Cirami, 563 F.2d 26, 32 (2d Cir. 1977) (citation and quotation marks omitted), the Second Circuit has also questioned the scope of its reach, noting that "whether the water in the reservoir is scant or grand[] is far from clear." Nemaizer, 793 F.2d at 63. In any event, it is clear that Rule 60(b)(6) is "properly invoked only when there are extraordinary circumstances justifying relief or when the judgment may work an extreme and undue hardship, . . . and that motions under Rule 60(b) are disfavored." Simone v. Prudential Ins. Co. of Am., 164 F. App'x 39, 40 (2d Cir. 2006) (summary order) (internal quotation marks and citation omitted).

Although the Second Circuit previously called it "well settled that a change in decisional law is not grounds for relief under Rule 60(b)(6)," Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 757 (2d Cir. 1986), some more recent decisions have undermined this categorical language, noting instead that such a change alone "rarely" provides grounds for 60(b)(6) relief. See, e.g., Agostini v. Felton, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6). . . ."); see also Tapper v. Hearn, 833 F.3d 166, 172 (2d Cir. 2016) ("As a general matter, a mere change in decisional law does not constitute an extraordinary circumstance for the purposes of Rule 60(b)(6), . . . and the interest in finality outweighs the losing party's concern that justice was not done.") (internal quotation marks, citations, and alteration omitted); see also Kemp, 142 S. Ct. at 1865 (Sotomayor, J., concurring) (clarifying that "nothing in [the Court's opinion] casts doubt

14

on the availability of Rule 60(b)(6) to reopen a judgment in extraordinary circumstances, including a change in controlling law") (citations omitted).

Some district courts have utilized a four-factor test to determine whether a supervening change in law justifies Rule 60(b)(6) relief, the four factors being: "(1) whether the new law is 'beyond any question inconsistent' with the earlier decision; (2) whether the moving party notified the court of a pending motion that may alter the decisional law; (3) whether 'substantial' time had elapsed between the earlier decision and the pending motion; and (4) whether the equities strongly favor the moving party." Scott v. Gardner, 344 F. Supp. 2d 421, 426 (S.D.N.Y. 2004) (quoting Devino v. Duncan, 215 F. Supp. 2d 414, 418 (S.D.N.Y. 2002)). This test traces back to the Second Circuit's decision in Sargent v. Columbia Forest Products, Inc., where the Second Circuit identified these factors as relevant in determining the propriety of recalling its mandate when faced with an intervening change of law. 75 F.3d 86, 90-91 (2d Cir. 1996). Although the Second Circuit has not "employed the framework in the context of a Rule 60(b)(6) motion[,]" it "recognize[s] that in some cases Sargent's framework may be helpful in determining whether a change in decisional law . . . may constitute the 'extraordinary circumstances' needed to warrant Rule 60(b)(6) relief." Stevens v. Miller, 676 F.3d 62, 69 n.7 (2d Cir. 2012).

**B. Application**

In ruling on the motion under Rule 60(b)(1), I have already concluded that this case does not present "extraordinary circumstances" that would warrant vacating the prior judgment, even had Engel announced new controlling law that dictated a different outcome here. But more importantly, I determined that it is questionable at best whether Engel would change the outcome of my April 8, 2020 decision. Thus, even were I to proceed to the Sargent factors, there would be no occasion to move beyond the first. Engel cannot be "beyond any question inconsistent" with my April 8, 2020 decision where I have already found that it is likely that its holding would not

15

change the result of my earlier decision. See Sargent, 75 F.3d at 90. Accordingly, there is no reason under 60(b)(6) to vacate the April 9, 2020 judgment.[6]

## CONCLUSION

For these reasons, CIT's motion to vacate the April 8, 2020 decision and April 9, 2020 judgment pursuant to Rule 60(b)(1) and (6) and to enter summary judgment in favor of CIT is **DENIED**.

SO ORDERED.

Dated: November 16, 2022
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge

---

[6] I acknowledge, as CIT points out, that keeping the prior decision in place will lead to the unpalatable outcome of allowing the Zismans to "walk away from a debt in excess of $1,000,000.00 and [to] own the property free and clear of a mortgage." (Pl. Mem. at 6.) Unfortunately, that is what the law requires.