1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
CIT BANK, N.A.,                   :  17-CV-2126(CBA)
                                  :
            Plaintiff,            :
                                  :
                                  :  United States Courthouse
        -against-                 :  Brooklyn, New York
                                  :
                                  :
                                  :
                                  :  Monday, May 24, 2021
ZISMAN, ET AL.,                   :  1:00 p.m.
                                  :
            Defendants.           :
                                  :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE CAROL BAGLEY AMON
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S :

For the Plaintiffs:       BRONSTER, LLP
                          Attorneys for the Plaintiff -
                          CIT Bank, N.A.
                              156 West 56th Street
                              Suite 902
                              New York, New York 10018
                          BY: SEAN K. MONAHAN, ESQ.

For the Defendants:       SUSLOVICH & KLEIN, LLP
                          Attorneys for the Defendants -
                          Zisman, et al.
                              1507 Avenue M
                              Brooklyn, New York 11230
                          BY: MARK M. KRANZ, ESQ.

Court Reporter:   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                  Official Court Reporter
                  Telephone: (718) 613-2487
                  Facsimile: (718) 613-2694
                  E-mail: Anthony_Frisolone@nyed.uscourts.gov

Proceedings recorded by computerized stenography.
Transcript produced by Computer-aided Transcription.

*Telephone Conference*                                               2

1          (Parties appear via telephone.)

2          MR. MONAHAN:  Sean Monahan for the plaintiff.

3          MR. KRANZ:  Mark Kranz for defendant, Sharon

4   Zisman and Beryl Zisman.

5          THE COURT:  Good afternoon.  This is Judge Amon on

6   the phone.  I'll ask my law clerk to please call the case,

7   Mr. Watson.

8          COURTROOM DEPUTY:  Good afternoon.  Today's case

9   is CIT Bank N.A., v. Zisman et al. 17-CV-2126.  On today for

10  oral argument regarding CIT Bank's motion to vacate

11  judgment.

12         Representing plaintiff, we have Sean Monahan; for

13  defendants Mark Kranz.  Court reporter is Anthony Frisolone

14  and he's on the line.

15         THE COURT:  All right.  Mr. Monahan, do you want

16  to begin.

17         MR. MONAHAN:  Yes, Your Honor.  Good afternoon.

18         THE COURT:  Good afternoon.

19         MR. MONAHAN:  In February the New York Court of

20  Appeals for the first time issued a decision stating whether

21  discontinuing a foreclosure action alone is sufficient to

22  revoke an acceleration that occurred due to that foreclosure

23  action.  This overturned the standing law in the Appellate

24  Division which held that revoking -- the discontinuance

25  alone does not constitute an affirmative act that revokes an

*Telephone Conference*                              3

1   acceleration.  However, and that had been decided --

2            THE COURT:  Yes.  I understand your argument about

3   how this had not been the law before.  But isn't to the

4   discontinuance that is the important date.  In other words,

5   that governs the deacceleration, it's the discontinuance

6   itself?  It's not deaccelerated until there is a

7   discontinuance, correct?

8            MR. MONAHAN:  Yes, Your Honor.

9            THE COURT:  I'm correct that the actual

10  discontinuance the so ordered stipulation was not until

11  May 16, 2016; correct.

12           MR. MONAHAN:  Correct.  But the affirmative act

13  taken by the plaintiff was when it moved for a voluntary

14  discontinuance which was in the beginning of February.  And

15  the reason that a motion had to be made was because the

16  defendants refused to sign the stipulation at that time.

17  The plaintiff reach out to the defendants asking that they

18  would be willing to sign the stipulation to discontinue and

19  they said no so plaintiff was forced to make a motion which

20  then was decided by stipulation until several months later.

21  But the affirmative act that triggered the deacceleration

22  was when the plaintiff moved for dismissal.

23           THE COURT:  Now, are you bringing this under

24  §60(b)(1) or §60(b)(6) or both.

25           MR. MONAHAN:  It will fit under oath.  There is

*Telephone Conference*                                          4

1  grounds for this motion for both (b)(1) and (b)(6).

2       THE COURT:  Well, in your premotion letter you

3  didn't mention (b)(1), did you?  Weren't you referring to

4  (b)(6).

5       MR. MONAHAN:  I would have to double check the

6  letter.  §60(b), in general but I would have to look at the

7  letter which I don't have in front of me I would have to

8  look through the file for it.

9       THE COURT:  I thought it was principally because,

10 yeah, I thought it was principally -- you mentioned 60(b)

11 but I think you don't cite the only provision of 60(b) that

12 you specifically cite is §60(b)(6) the reason I ask is that

13 60(b) (1) has to be brought within a year.

14      MR. MONAHAN:  Yes.

15      THE COURT:  And I don't think that comes within a

16 year.

17      MR. MONAHAN:  The motion was decided in April of

18 2020 and our letter requesting the premotion conference was

19 in March 2, 2021.

20      THE COURT:  That was your letter, but your

21 letter -- you didn't actually make the motion till April and

22 your letter didn't refer to (b)(1) that's why I'm wondering

23 how it's timely.  It's either referred to (b)(1).  I think a

24 premotion letter would be effective in terms of coming

25 within a year but in any event I don't think that issue was

*Telephone Conference*                                    5

1    raised by your adversary, so.  But isn't to true that

2    changes in the law are generally not an appropriate grounds

3    for a (b)(6).

4            MR. MONAHAN:  It depends on the timing and the

5    situation because the reason why in general they are not

6    grounds is because it's trying to avoid using a §60(b)(6)

7    motion as an alternative for an appeal and the line of cases

8    that discuss federal situations where the time to appeal has

9    expired and now the party is bringing the motion sometimes

10   several years later well after the case was decided and

11   resolved and closed.  Here, we have a situation where our

12   appeal is pending and this actually decision happens during

13   the indictment to appeal because the time to appeal is

14   stayed while our motion for reconsideration was pending.

15   The reason we're bringing this here now --

16           THE COURT:  I'm sorry your motion for

17   reconsideration just didn't deal with the heart of the

18   opinion.  It just dealt with the fees issue, right?

19           MR. MONAHAN:  Correct.  But under the rule, it

20   says that if a motion for reconsideration is pending the

21   time to appeal does not side and you list motion until the

22   last motion is decided.  So everything was stayed in the

23   second department or the Second Circuit.

24           THE COURT:  What about the appeal now.  In other

25   words, once the motion for reconsideration was denied, is

*Telephone Conference*                                    6

1    the stay of your appeal still in effect, or are you now

2    briefing that issue before the Court of Appeals?

3          MR. MONAHAN:  The briefing hasn't started yet.

4    It's actually on another firm co-counsel is handling the

5    appeal but the Second Circuit has asked for a status update

6    and we advised that we were making this Rule 60 motion.  So

7    the Second Circuit hasn't proceeded with briefing the appeal

8    yet.

9          THE COURT:  Did they say anything in response to

10   that?  Did you argue for the stay to remain in effect.

11         MR. MONAHAN:  Yes.  Date that was filed by

12   co-counsel stated that Rule 60 motion was being briefed and

13   would be argued and, you know, therefore we could that the

14   stay was in place and the Court -- the Second Circuit hasn't

15   done anything to lift stay we advised them exactly of where

16   things are in the district court and so the stay is still in

17   place because it has been lifted.

18         THE COURT:  To hasn't been lifted you say?

19         MR. MONAHAN:  Correct.  The elevate we have from

20   the Court is that the stay was in place.

21         THE COURT:  To said that?  The Court said that?

22         MR. MONAHAN:  Back when we filed the motion for

23   reconsideration, the Court issued an order staying r saying

24   that the case is stayed pending the outcome and we are to

25   after 30 days provide an update which we did and now we're

*Telephone Conference*                                    7

1    providing an update that this Rule 60 motion is pending and

2    the Court has not issued anything indicating that the stay

3    that was put in place has been lifted.

4         THE COURT:  But the motion for reconsideration was

5    the reason you had a stay, not the 60(b) motion.

6         MR. MONAHAN:  Correct, your Honor.  Although a

7    60(b) motion is one of the motions that does stay the time

8    to appeal as well.

9         THE COURT:  Well, continue with your argument as

10   to why you think that this motion should be granted.

11        MR. MONAHAN:  Well, under the new laws in the

12   State of New York a voluntary discontinuing a foreclosure

13   revokes the acceleration.  And in our case here the

14   acceleration that the Court determined was the affidavit

15   that was filed in support of a motion for summary judgment.

16   And so, because this action was voluntary discontinued, even

17   if that did accelerate the action, that acceleration was

18   discontinued when plaintiff in the state court action moved

19   to voluntarily discontinue the action.  And so, therefore,

20   since the acceleration was revoked, the loan revert the back

21   to an installment which it's payable on installment about

22   the acceleration this action was timely filed foreclosure

23   action.

24        THE COURT:  After that voluntary discontinuance

25   did you speak to on -- did you advise the Zismans.  Now your

1  general payments that make with the bank was there any

2  notice of that.

3          MR. MONAHAN:  Under the new law that is not

4  required because the Court of Appeals -- New York Court of

5  Appeals wanted to set a strict rule.  Prior to that the

6  Appellate Division had been saying we're going to look at

7  each one and see what happens and the Court of Appeals is

8  concerned that there wasn't any clarity you'd have all sorts

9  of their opinions coming from different course different

10 cases so they wanted to set this if foreclosure is

11 voluntarily discontinued that would draw the acceleration

12 from that occurred due to the foreclosure.

13         THE COURT:  So what case governs this in your view

14 in terms of the analysis under 60(b) is it the four-factor

15 test, is that what you believe governs this?

16         MR. MONAHAN:  We believe that -- so it does under

17 the four-factor test cover it.  And also, under schul house

18 and the principle in schul house is when you are making this

19 motion and there is an appeal pending for it makes the most

20 sense to have the district court make a decision.  The issue

21 is going to be going in front of the Court of Appeals and

22 then if the corpse rules that, yes, this new law does

23 require the district court decision to be vacated it's

24 bringing back in the district court and get a delay cause

25 time and expense for judicial efficiency so that says

*Telephone Conference*                          9

1   district court decides it.

2        THE COURT:  Let me ask you something.  That I deny

3   your 60(b) motion here what is it that you can appeal to the

4   Circuit now?  It's just the denial of the 60(b) motion,

5   correct?

6        MR. MONAHAN:  No, our pending appeal is on the

7   original decision last year.

8        THE COURT:  I'm sorry.  It's the original decision

9   about whether there was an acceleration.  The acceleration.

10       MR. MONAHAN:  Correct.  We appealed the prior

11  decision.

12       THE COURT:  How are you going to raise assuming I

13  deny your motion for 60(b) can you raise in the -- you can't

14  raise the <u>Engel</u> argument in any an other than how to appears

15  to be a 60(b) motion.

16       MR. MONAHAN:  We believe this was not an issue

17  that could have been raised previously because at the time

18  the motion was made, every decision at the appellate level

19  had said that voluntarily discontinuing an action alone is

20  not an affirmative act to the acceleration.  However, that

21  was then changed so this can be raised because this is not

22  an argument that was available to us at the time the

23  original motion was made.

24       THE COURT:  Well, there was some Supreme Court law

25  that held your way, correct?

*Telephone Conference*                                    10

1        MR. MONAHAN:  There was some Supreme Court but

2   there was no Appellate Division, and when the Court of

3   Appeals had not ruled on decision and the Second Circuit had

4   said that courts should look to the Appellate Division to

5   for guidance as to how the Court of Appeals would likely

6   decide and at the time no Appellate Division court had said

7   that a voluntary discontinuance would revoke the

8   acceleration.  The second department and the First

9   Department had both ruled that it does not and then

10  subsequent to our motion to be filed the Third Department

11  also did that as recently as a week before the Court of

12  Appeals issued their decision, the Second Department was

13  still issuing decisions saying that, no, a voluntary

14  discontinuance does not revoke the acceleration.  At the

15  time that we filed our motion --

16        THE COURT:  Go ahead.

17        MR. MONAHAN:  Yes, Your Honor.

18        THE COURT:  No, go ahead.

19        MR. MONAHAN:  At the time we filed other motion,

20  there was no way to know that a case was even coming before

21  the Court of Appeals because the corpse hadn't granted leave

22  to even hear Engel at the time.  So based on all Appellate

23  Division precedent and all Appellate Division decisions

24  which are what, you know, the court is supposed to look at

25  for guidance said that it wasn't a valid argument it had no

*Telephone Conference*                    11

1   merit at all we didn't raise it at the time because it do so

2   would have an it would have been frivolous and n any opinion

3   it would essentially violate the rules because there was no

4   basis for us do bring that argument other than a few Supreme

5   Court decisions that had been overturned.

6          THE COURT:  The standard you have to meet is that

7   the new announced in <u>Engel</u> is not beyond any question

8   inconsistent with the Court's April 9th judgment, correct?

9          MR. MONAHAN:  Correct.

10         THE COURT:  Why isn't it -- how can you make that

11  finding when we're talking -- when it's not clear from the

12  <u>Engel</u> decision whether simply a motion for voluntary

13  continuance governs as opposed to the granting of that

14  motion.

15         MR. MONAHAN:  Well, the language of <u>Engel</u>

16  specifically states -- let me give you the exact quote.  The

17  language refers to -- the key in the New York law, but it

18  comes to both accelerating and deaccelerating is an

19  affirmative act.  The lender has to make an affirmative act

20  to accelerate it and to later deaccelerate.

21         So the only affirmative act that the lender can

22  make was to file the motion by waiting until a decision

23  comes along and is actually continued that is -- would be on

24  the Court it do it so that would not be an affirmative act

25  on behalf of the lender.

*Telephone Conference*                    12

1        Additionally, by doing so, it shifts the timing to

2   either the defendant or the Court as to when the lender is

3   choosing to discontinue.  And, in this case, especially the

4   lender wished to discontinue in the beginning of February

5   reached out to the defendant, the defendant refused, and

6   then that caused there to be the delay because under the

7   C.P.L.R., the only way to discontinue the action was to

8   either have stipulations signed by all parties, but the

9   defendant refused, or proceed by motion.

10       So the lender had a no choice to go by motion

11  because of the act of the defendant.  So to then have, say,

12  while the defendant can delay when the deacceleration

13  happens by refusing to send a stipulation, of course, in a

14  motion to be heard which can take months, the purpose of the

15  lender taking that affirmative act to discontinue the action

16  and deaccelerate the loan.

17       THE COURT:  Okay.  Do you want to add anything

18  else before I hear from your adversary?

19       MR. MONAHAN:  No, I think that covered the main

20  points of the argument.

21       THE COURT:  Okay.  Thank you.  Mr. Kranz, do you

22  want to be heard?

23       MR. KRANZ:  Yes briefly, your Honor.  Thank you.

24       Good afternoon, this is Mark Kranz speaking.

25       In connection with the Engel case, there's two

*Telephone Conference*                                    13

1   very important points which counsel is glossing over and

2   your Honor keeps on asking about.

3           That case factually was talking about when the

4   acceleration was in the complaint.  In our case, that's not

5   the acceleration that this court ruled is -- the timing --

6   began the timing for the statute of limitations.  The

7   acceleration was by a separate sworn affidavit by the new

8   owner of the loan almost a year after the action was

9   commenced.

10          In the Engel case repeatedly says that when

11  there's an acceleration by commencement of a foreclosure

12  action, that is what is withdrawn by a voluntary

13  discontinuance and that's not what we're discussing here.

14  We're not discussing the commencement -- the acceleration in

15  the complaint.  We're discussing here a separate later,

16  almost a year later, by a new party acceleration by

17  affidavit.

18          The other point --

19          THE COURT:  I don't understand.  That seems to me

20  to be a distinction without a difference.  What difference

21  does it make?

22          MR. KRANZ:  It does make a difference.

23          THE COURT:  It is still affirmative.  Arguably, it

24  is still an affirmative act.

25          MR. KRANZ:  It's an affirmative act, but when

*Telephone Conference*                                        14

1   there's a withdrawal of an action, a voluntary

2   discontinuance of a foreclosure action, what exactly does

3   that discontinuance withdraw?  The <u>Engel</u> case makes a leap

4   and says, oh, there was an acceleration in the complaint and

5   you're voluntarily withdrawing the complaint, so then you're

6   also withdrawing the acceleration contained in the

7   complaint.

8            In our case, that's not the acceleration that

9   started the statute of limitations.  In other words, that

10  case took place over six years.  So is every little thing

11  that ever happened during that six-year timeframe

12  automatically withdrawn by a voluntary discontinuance?  The

13  answer is, no.  The <u>Engel</u> case said that if you withdrew the

14  complaint then the acceleration contained in the complaint

15  is withdrawn.

16           Over here, that's not the acceleration that

17  started the statute of limitations.  That was something that

18  happened a year later by a new owner.  So it's a very,

19  very -- is a big difference between our case and the <u>Engel</u>

20  case.

21           And the other point that counsel is glossing over,

22  this was not a voluntary discontinuance.  The stipulation,

23  which was ordered by the judge in the state court,

24  withdrew -- it granted summary judgment, this was not a

25  voluntary discontinuance.  And, in fact, that stipulation,

*Telephone Conference*                              15

1   which was so ordered by the judge, specifically says that

2   the plaintiff is withdrawing its motion to voluntarily

3   discontinue the action.

4          So if there was any voluntary discontinuance that

5   itself was withdrawn.  So to the extent you could say that

6   there was possibly a withdrawal of the acceleration, that

7   withdrawal itself was withdrawn and that's a very important

8   point.

9          This case is completely different from the <u>Engel</u>

10  case based on these two important factors.  I spent a lot of

11  time in my papers, your Honor, addressing those two points.

12  The Court of Appeals in <u>Engel</u> is very limited.  Spoke about

13  those specific facts.  And, in fact, if you read the <u>Engel</u>

14  case repeatedly, every single time it says "discontinuance,"

15  to says, "voluntary discontinuance."  Over there this was

16  not voluntary discontinue.  Prior action was ended by a

17  summary judgment, by a so-ordered stipulation.

18          THE COURT:  All right.  Are you saying that <u>Engel</u>

19  only solely applies to voluntary discontinuances?  The case

20  doesn't say that.

21          MR. KRANZ:  Yes.  Every single time that case

22  says -- in fact, I'll read from the language, your Honor.

23  It says, "A voluntary discontinuance withdraws the

24  complaint.  And when a complaint is the only expression of a

25  demand for immediate payment of the entire debt, this is a

*Telephone Conference*                                    16

1  functional equivalent of a statement by the lender that the

2  acceleration is being revoked."

3          In other words, when that's the only expression,

4  when it's in the complaint, okay, and it has to be done by a

5  voluntary discontinuance.  They're coming forward, the Court

6  in Engel is saying, if you come forward and you voluntarily

7  withdraw your complaint that's like you're saying we are

8  deaccelerating.  Over here, that is not the situation.

9  Number one, it was not in the complaint.  Number two, it's

10 not a voluntary discontinuance.  So the two most important

11 criteria which is necessary to reach the Engel holding we

12 don't have here.

13         THE COURT:  Well there is some language in Engel

14 that talks about making a motion for voluntary

15 discontinuance.

16         MR. KRANZ:  I didn't see that.  I didn't see that.

17 It could be I missed it but I didn't see that.  Every single

18 time it say there voluntary discontinuance.  But here, the

19 motion for voluntary distance, they withdrew the voluntary

20 distance.  Even to the extent that we say that it is a

21 voluntary discontinuance, they withdrew it.  Before the

22 motion was heard, they withdrew it and that's in the

23 stipulation.  So they're missing the two most important

24 ingredients to reach the Engel holding from the way I see

25 it.

*Telephone Conference* 17

1      Procedurally, your Honor really addressed the main

2  issues.  Just one issue if I can discuss a little more.

3      They talk about -- this was -- counsel refers to

4  the <u>Schuldov</u> case.  Over here, there was 11 days after.

5  Here, it's 11 months after the order and it was supposed to

6  be brought right away.  Your Honor also mentioned another

7  important point that it has to be as the Court there said,

8  Beyond any question inconsistent with our earlier decision.

9  And here, there's certainly questions.  I argue that it's

10 not even -- the facts are not even close but it's certainly

11 not beyond any question.

12     Another point is that Rule 60(c)(1) says that it

13 has to be a reasonable time after the decision, the judgment

14 order.  And that doesn't go from when the new case comes in,

15 that comes from then which is 11 months later.  So I would

16 argue that the procedurally the motion cannot be brought.  I

17 think it it could -- it think these arguments could be made

18 on appeal.  I don't think plaintiff loses its ability to

19 make these arguments which is another point that your Honor

20 made.

21     THE COURT:  What makes the arguments if he never

22 made the argument to the district court and he made it only

23 in the context of a Rule 60 motion and the Court denied it

24 on Rule 60 grounds, how would he make the argument before

25 the Court of Appeals?

*Telephone Conference*                              18

1          MR. KRANZ:  I think, I don't know, but I think the

2     argument is still available on the grounds that the <u>Engel</u>

3     court has, you know, to the extent it is -- it's controlling

4     over our case it wasn't before the lower court, your Honor,

5     because the decision wasn't made at that time.  And I think

6     the law is the law.  If it applies, it can be raised.

7     That's what I think.

8          THE COURT:  Well, why wouldn't the Court of

9     Appeals want it to be decided first in the district court

10    since it's before me now if that's the case.

11         MR. KRANZ:  I think that the whole concept of

12    these procedural rules is to have some finality.  Things are

13    supposed -- times are not supposed to go on forever.  He

14    filed a notice of appeal, it's already at the appellate

15    court.  The Court has already issued a decision and a

16    judgment.  Procedurally, if there's any further issues, it

17    has to be brought in connection with the appeal.  There has

18    to be some finality, you can't keep on going back to the

19    district court every time there's a new decision which you

20    think impacts on your case.  That's my understanding.

21         THE COURT:  Do you have anything else you want to

22    add?

23         MR. KRANZ:  That's it, your Honor, thank you.

24         THE COURT:  Okay.

25         Do you have any -- Mr. Monahan, anything you want

*Telephone Conference*                            19

1    to say in response to an argument made by Mr. Kranz?

2              MR. MONAHAN:  Yes, just briefly.  Couple points.

3              First, he said withdrawal -- a voluntary

4    discontinuance of the action doesn't withdraw everything.

5    But, in fact, under Newman v. Newman states that when

6    voluntarily discontinuing an action not only is the

7    complaint withdrawn.  But it is as if it had never been --

8    everything done in the action is annulled and all prior

9    orders in the case are nullified.  So, yes, withdrawing the

10   action does withdraw everything that happens.  I was saying

11   that it is, as your Honor said, a distinction without a

12   difference because it is a voluntary act of making a motion

13   that is to withdraw.

14             The other point I want to make is I know there was

15   discussion with who Engel mentioned voluntary motion and I

16   have the exact quote right here.  Where the Court says that,

17   the issue before the Court was whether a -- here, whether a

18   noteholder's voluntary motion or stipulation to discontinue

19   the foreclosure action, which is not expressly mentioned

20   deacceleration, constitutes a sufficiently affirmative

21   action of the acceleration.

22             So the Court of Appeals is not making a

23   distinction between a voluntary motion or a stipulation.

24   The cases in front of it happen to be a stipulation, but all

25   these issue in front, the Court, the Court of Appeals says

1    that voluntary motion is included.  It doesn't say, The

2    granting of a voluntary motion.  It just says whether the

3    holder's voluntary motion, which was made in February, not

4    when the stipulation was signed.

5            And that just goes to the whole point of what the

6    Court of Appeals was trying to get to here was that they

7    want a bright line rule.  They want judicial economy.  They

8    don't want every court looking at every action.  Looking

9    at -- combing through every single paper that was filed to

10   find out, well, was this revoked?  Was it not?  It was a

11   voluntary discontinue an action whether by motion or by

12   stipulation, that is an affirmative act that withdraws the

13   acceleration.

14           And finally, Mr. Kranz mentioned that the

15   stipulation then was withdrew the withdrawal, but the loan

16   was deaccelerated when the motion was filed.  When the

17   affirmative act was made.  So if -- and he says it was later

18   withdrawn, that would just be a reacceleration in 2016 which

19   would, of course, this action would be timely during the

20   acceleration in 2016.

21           And just to summarize everything, this action, it

22   is going up to the Second Circuit but the Second Circuit has

23   the case law and Shuldov saying that when -- it doesn't make

24   sense to go up to the Second Circuit when the district court

25   can easily decide at the district court level because we

*Telephone Conference*                           21

1   argued this out in the Second Circuit.

2            The Second Circuit says, you know, you're right,

3   Engel applies, make its motion, we're right back down to the

4   district court, we're where right back to where we started a

5   year plus down the road.  So why we've wasted all of time

6   and money when we can just do it right now.

7            THE COURT:  I'm deciding whether you have grounds

8   for a §60(b) motion.  That's not technically whether Engel

9   applies.

10           MR. MONAHAN:  Correct, your Honor.

11           The reason why the §60(b) motion would be because

12  the -- to avoid a going back to the Second Circuit back and

13  forth and just delaying things any more while we decide

14  whether a §60(b) can be made --

15           THE COURT:  You will agree that I can't actually

16  grant it, I would just have to address an indicative ruling;

17  correct?

18           MR. MONAHAN:  Yes, Your Honor, the indicative

19  ruling.  We, as a party, would notify the Second Circuit so

20  they can remand it down so you can issue your opinion.

21           THE COURT:  Okay.  All right.  Thank you,

22  gentlemen.

23           MR. KRANZ:  Thank you, your Honor.

24           MR. MONAHAN:  Thank you, your Honor.

25           (WHEREUPON, this matter was adjourned.)

*Telephone Conference*                                              22

                              *   *   *


                    <u>CERTIFICATE OF REPORTER</u>


I certify that the foregoing is a correct transcript of the
record of proceedings in the above-entitled matter.




_____
Anthony D. Frisolone, FAPR, RDR, CRR, CRI
Official Court Reporter

## 1

**1** [1] - 4:13
**10018** [1] - 1:16
**11** [3] - 17:4, 17:5, 17:15
**11230** [1] - 1:20
**1507** [1] - 1:19
**156** [1] - 1:15
**16** [1] - 3:11
**17-CV-2126** [1] - 2:9
**17-CV-2126(CBA** [1] - 1:3
**1:00** [1] - 1:8

## 2

**2** [1] - 4:19
**2016** [3] - 3:11, 20:18, 20:20
**2020** [1] - 4:18
**2021** [2] - 1:7, 4:19
**24** [1] - 1:7

## 3

**30** [1] - 6:25

## 5

**56th** [1] - 1:15

## 6

**60** [5] - 6:6, 6:12, 7:1, 17:23, 17:24
**60(b** [10] - 4:10, 4:11, 4:13, 7:5, 7:7, 8:14, 9:3, 9:4, 9:13, 9:15
**60(c)(1** [1] - 17:12
**613-2487** [1] - 1:22
**613-2694** [1] - 1:23

## 7

**718** [2] - 1:22, 1:23

## 9

**902** [1] - 1:16
**9th** [1] - 11:8

## A

**ability** [1] - 17:18
**above-entitled** [1] - 22:6
**accelerate** [2] - 7:17, 11:20
**accelerating** [1] - 11:18
**acceleration** [29] - 2:22, 3:1, 7:13, 7:14, 7:17, 7:20, 7:22, 8:11, 9:9, 9:20, 10:8, 10:14, 13:4, 13:5, 13:7, 13:11, 13:14, 13:16, 14:4, 14:6, 14:8, 14:14, 14:16, 15:6, 16:2, 19:21, 20:13, 20:20
**act** [15] - 2:25, 3:12, 3:21, 9:20, 11:19, 11:21, 11:24, 12:11, 12:15, 13:24,

13:25, 19:12, 20:12, 20:17
**action** [27] - 2:21, 2:23, 7:16, 7:17, 7:18, 7:19, 7:22, 7:23, 9:19, 12:7, 12:15, 13:8, 13:12, 14:1, 14:2, 15:3, 15:16, 19:4, 19:6, 19:8, 19:10, 19:19, 19:21, 20:8, 20:11, 20:19, 20:21
**actual** [1] - 3:9
**add** [2] - 12:17, 18:22
**additionally** [1] - 12:1
**address** [1] - 21:16
**addressed** [1] - 17:1
**addressing** [1] - 15:11
**adjourned** [1] - 21:25
**adversary** [2] - 5:1, 12:18
**advise** [1] - 7:25
**advised** [2] - 6:6, 6:15
**affidavit** [3] - 7:14, 13:7, 13:17
**afternoon** [5] - 2:5, 2:8, 2:17, 2:18, 12:24
**agree** [1] - 21:15
**ahead** [2] - 10:16, 10:18
**aided** [1] - 1:25
**AL** [1] - 1:8
**al** [2] - 1:19, 2:9
**almost** [2] - 13:8, 13:16
**alone** [3] - 2:21, 2:25, 9:19
**alternative** [1] - 5:7
**AMON** [1] - 1:11
**Amon** [1] - 2:5
**analysis** [1] - 8:14
**announced** [1] - 11:7
**annulled** [1] - 19:8
**answer** [1] - 14:13
**Anthony** [3] - 1:21, 2:13, 22:11
anthony_Frisolone@nyed.uscourts.
**gov** [1] - 1:23
**appeal** [17] - 5:7, 5:8, 5:12, 5:13, 5:21, 5:24, 6:1, 6:5, 6:7, 7:8, 8:19, 9:3, 9:6, 17:18, 18:14, 18:17
**appealed** [1] - 9:10
**Appeals** [16] - 2:20, 6:2, 8:4, 8:5, 8:7, 8:21, 10:3, 10:5, 10:12, 10:21, 15:12, 17:25, 18:9, 19:22, 19:25, 20:6
**appear** [1] - 2:1
**Appellate** [7] - 2:23, 8:6, 10:2, 10:4, 10:6, 10:22, 10:23
**appellate** [2] - 9:18, 18:14
**applies** [4] - 15:19, 18:6, 21:3, 21:9
**appropriate** [1] - 5:2
**April** [3] - 4:17, 4:21, 11:8
**arguably** [1] - 13:23
**argue** [3] - 6:10, 17:9, 17:16
**argued** [2] - 6:13, 21:1
**argument** [12] - 2:10, 3:2, 7:9, 9:14, 9:22, 10:25, 11:4, 12:20, 17:22, 17:24, 18:2, 19:1
**arguments** [3] - 17:17, 17:19, 17:21
**assuming** [1] - 9:12
**Attorneys** [2] - 1:14, 1:18
**automatically** [1] - 14:12
**available** [2] - 9:22, 18:2
**Avenue** [1] - 1:19
**avoid** [2] - 5:6, 21:12

## B

**b)(1** [3] - 4:1, 4:3, 4:22
**b)(1)** [1] - 4:23
**b)(6)** [3] - 4:1, 4:4, 5:3
**BAGLEY** [1] - 1:11
**bank** [1] - 8:1
**BANK** [1] - 1:3
**Bank** [2] - 1:15, 2:9
**Bank's** [1] - 2:10
**based** [2] - 10:22, 15:10
**basis** [1] - 11:4
**BEFORE** [1] - 1:11
**began** [1] - 13:6
**begin** [1] - 2:16
**beginning** [2] - 3:14, 12:4
**behalf** [1] - 11:25
**Beryl** [1] - 2:4
**between** [2] - 14:19, 19:23
**beyond** [2] - 11:7, 17:11
**Beyond** [1] - 17:8
**big** [1] - 14:19
**briefed** [1] - 6:12
**briefing** [3] - 6:2, 6:3, 6:7
**briefly** [2] - 12:23, 19:2
**bright** [1] - 20:7
**bring** [1] - 11:4
**bringing** [4] - 3:23, 5:9, 5:15, 8:24
**BRONSTER** [1] - 1:14
**Brooklyn** [2] - 1:5, 1:20
**brought** [4] - 4:13, 17:6, 17:16, 18:17
**BY** [2] - 1:17, 1:20

## C

**C.P.L.R** [1] - 12:7
**cannot** [1] - 17:16
**CAROL** [1] - 1:11
**case** [30] - 2:6, 2:8, 5:10, 6:24, 7:13, 8:13, 10:20, 12:3, 12:25, 13:3, 13:4, 13:10, 14:3, 14:8, 14:10, 14:13, 14:19, 14:20, 15:9, 15:10, 15:14, 15:19, 15:21, 17:4, 17:14, 18:4, 18:10, 18:20, 19:9, 20:23
**cases** [3] - 5:7, 8:10, 19:24
**CAUSE** [1] - 1:11
**caused** [1] - 12:6
**certainly** [2] - 17:9, 17:10
**CERTIFICATE** [1] - 22:4
**certify** [1] - 22:5
**changed** [1] - 9:21
**changes** [1] - 5:2
**check** [1] - 4:5
**choice** [1] - 12:10
**choosing** [1] - 12:3
**Circuit** [1] - 9:4
**CIT** [4] - 1:3, 1:15, 2:9, 2:10
**cite** [2] - 4:11, 4:12
**CIVIL** [1] - 1:11
**clarity** [1] - 8:8
**clear** [1] - 11:11
**clerk** [1] - 2:6
**close** [1] - 17:10

**closed** [1] - 5:11
**co** [2] - 6:4, 6:12
**co-counsel** [2] - 6:4, 6:12
**combing** [1] - 20:9
**coming** [4] - 4:24, 8:9, 10:20, 16:5
**commenced** [1] - 13:9
**commencement** [2] - 13:11, 13:14
**complaint** [13] - 13:4, 13:15, 14:4, 14:5, 14:7, 14:14, 15:24, 16:4, 16:7, 16:9, 19:7
**completely** [1] - 15:9
**Computer** [1] - 1:25
**Computer-aided** [1] - 1:25
**computerized** [1] - 1:24
**concept** [1] - 18:11
**concerned** [1] - 8:8
**CONFERENCE** [1] - 1:11
**conference** [1] - 4:18
**connection** [2] - 12:25, 18:17
**constitute** [1] - 2:25
**constitutes** [1] - 19:20
**contained** [2] - 14:6, 14:14
**context** [1] - 17:23
**continuance** [1] - 11:13
**continue** [1] - 7:9
**continued** [1] - 11:23
**controlling** [1] - 18:3
**corpse** [2] - 8:22, 10:21
**correct** [15] - 3:7, 3:9, 3:11, 3:12, 5:19, 6:19, 7:6, 9:5, 9:10, 9:25, 11:8, 11:9, 21:10, 21:17, 22:5
**counsel** [5] - 6:4, 6:12, 13:1, 14:21, 17:3
**couple** [1] - 19:2
**course** [3] - 8:9, 12:13, 20:19
**court** [21] - 2:13, 6:16, 7:18, 8:20, 8:23, 8:24, 9:1, 10:6, 10:24, 13:5, 14:23, 17:22, 18:3, 18:4, 18:9, 18:15, 18:19, 20:8, 20:24, 20:25, 21:4
**Court** [37] - 1:21, 1:22, 2:19, 6:2, 6:14, 6:20, 6:21, 6:23, 7:2, 7:14, 8:4, 8:7, 8:21, 9:24, 10:1, 10:2, 10:5, 10:11, 10:21, 11:5, 11:24, 12:2, 15:12, 16:5, 17:7, 17:23, 17:25, 18:8, 18:15, 19:16, 19:17, 19:22, 19:25, 20:6, 22:12
**Court's** [1] - 11:8
**Courthouse** [1] - 1:5
**COURTROOM** [1] - 2:8
**courts** [1] - 10:4
**cover** [1] - 8:17
**covered** [1] - 12:19
**CRI** [2] - 1:21, 22:11
**criteria** [1] - 16:11
**CRR** [2] - 1:21, 22:11

## D

**date** [2] - 3:4, 6:11
**days** [2] - 6:25, 17:4
**deaccelerate** [2] - 11:20, 12:16
**deaccelerated** [2] - 3:6, 20:16
**deaccelerating** [2] - 11:18, 16:8
**deacceleration** [4] - 3:5, 3:21, 12:12, 19:20

**deal** [1] - 5:17
**dealt** [1] - 5:18
**debt** [1] - 15:25
**decide** [3] - 10:6, 20:25, 21:13
**decided** [6] - 3:1, 3:20, 4:17, 5:10, 5:22, 18:9
**decides** [1] - 9:1
**deciding** [1] - 21:7
**decision** [17] - 2:20, 5:12, 8:20, 8:23, 9:7, 9:8, 9:11, 9:18, 10:3, 10:12, 11:12, 11:22, 17:8, 17:13, 18:5, 18:15, 18:19
**decisions** [3] - 10:13, 10:23, 11:5
**defendant** [7] - 2:3, 12:2, 12:5, 12:9, 12:11, 12:12
**defendants** [2] - 1:9, 2:13, 3:16, 3:17
**Defendants** [2] - 1:18, 1:18
**delay** [3] - 8:24, 12:6, 12:12
**delaying** [1] - 21:13
**demand** [1] - 15:25
**denial** [1] - 9:4
**denied** [2] - 5:25, 17:23
**deny** [2] - 9:2, 9:13
**Department** [3] - 10:9, 10:10, 10:12
**department** [2] - 5:23, 10:8
**DEPUTY** [1] - 2:8
**determined** [1] - 7:14
**difference** [5] - 13:20, 13:22, 14:19, 19:12
**different** [3] - 8:9, 15:9
**discontinuance** [25] - 2:24, 3:4, 3:5, 3:7, 3:10, 3:14, 7:24, 10:7, 10:14, 13:13, 14:2, 14:3, 14:12, 14:22, 14:25, 15:4, 15:14, 15:15, 15:23, 16:5, 16:10, 16:15, 16:18, 16:21, 19:4
**discontinuances** [1] - 15:19
**discontinue** [10] - 3:18, 7:19, 12:3, 12:4, 12:7, 12:15, 15:3, 15:16, 19:18, 20:11
**discontinued** [3] - 7:16, 7:18, 8:11
**discontinuing** [4] - 2:21, 7:12, 9:19, 19:6
**discuss** [2] - 5:8, 17:2
**discussing** [3] - 13:13, 13:14, 13:15
**discussion** [1] - 19:15
**dismissal** [1] - 3:22
**distance** [2] - 16:19, 16:20
**distinction** [3] - 13:20, 19:11, 19:23
**DISTRICT** [3] - 1:1, 1:1, 1:12
**district** [11] - 6:16, 8:20, 8:23, 8:24, 9:1, 17:22, 18:9, 18:19, 20:24, 20:25, 21:4
**Division** [7] - 2:24, 8:6, 10:2, 10:4, 10:6, 10:23
**done** [3] - 6:15, 16:4, 19:8
**double** [1] - 4:5
**down** [3] - 21:3, 21:5, 21:20
**draw** [1] - 8:11
**due** [2] - 2:22, 8:12
**during** [3] - 5:12, 14:11, 20:19

## E

**E-mail** [1] - 1:23
**easily** [1] - 20:25

**EASTERN** [1] - 1:1
**economy** [1] - 20:7
**effect** [2] - 6:1, 6:10
**effective** [1] - 4:24
**efficiency** [1] - 8:25
**either** [3] - 4:23, 12:2, 12:8
**elevate** [1] - 6:19
**ended** [1] - 15:16
**Engel** [22] - 9:14, 10:22, 11:7, 11:12, 11:15, 12:25, 13:10, 14:3, 14:13, 14:19, 15:9, 15:12, 15:13, 15:18, 16:6, 16:11, 16:13, 16:24, 18:2, 19:15, 21:3, 21:8
**entire** [1] - 15:25
**entitled** [1] - 22:6
**equivalent** [1] - 16:1
**especially** [1] - 12:3
**ESQ** [2] - 1:17, 1:20
**essentially** [1] - 11:3
**ET** [1] - 1:8
**et** [2] - 1:19, 2:9
**event** [1] - 4:25
**exact** [2] - 11:16, 19:16
**exactly** [2] - 6:15, 14:2
**expense** [1] - 8:25
**expired** [1] - 5:9
**expression** [2] - 15:24, 16:3
**expressly** [1] - 19:19
**extent** [3] - 15:5, 16:20, 18:3

## F

**Facsimile** [1] - 1:23
**fact** [4] - 14:25, 15:13, 15:22, 19:5
**factor** [2] - 8:14, 8:17
**factors** [1] - 15:10
**facts** [2] - 15:13, 17:10
**factually** [1] - 13:3
**FAPR** [2] - 1:21, 22:11
**February** [4] - 2:19, 3:14, 12:4, 20:3
**federal** [1] - 5:8
**fees** [1] - 5:18
**few** [1] - 11:4
**file** [2] - 4:8, 11:22
**filed** [10] - 6:11, 6:22, 7:15, 7:22, 10:10, 10:15, 10:19, 18:14, 20:9, 20:16
**finality** [2] - 18:12, 18:18
**finally** [1] - 20:14
**firm** [1] - 6:4
**First** [1] - 10:8
**first** [3] - 2:20, 18:9, 19:3
**fit** [1] - 3:25
**FOR** [1] - 1:11
**forced** [1] - 3:19
**foreclosure** [9] - 2:21, 2:22, 7:12, 7:22, 8:10, 8:12, 13:11, 14:2, 19:19
**foregoing** [1] - 22:5
**forever** [1] - 18:13
**forth** [1] - 21:13
**forward** [2] - 16:5, 16:6
**four** [2] - 8:14, 8:17
**four-factor** [2] - 8:14, 8:17
**Frisolone** [3] - 1:21, 2:13, 22:11
**frivolous** [1] - 11:2
**front** [4] - 4:7, 8:21, 19:24, 19:25

**functional** [1] - 16:1

**G**

**general** [3] - 4:6, 5:5, 8:1
**generally** [1] - 5:2
**gentlemen** [1] - 21:22
**glossing** [2] - 13:1, 14:21
**governs** [4] - 3:5, 8:13, 8:15, 11:13
**grant** [1] - 21:16
**granted** [3] - 7:10, 10:21, 14:24
**granting** [2] - 11:13, 20:2
**grounds** [6] - 4:1, 5:2, 5:6, 17:24, 18:2, 21:7
**guidance** [2] - 10:5, 10:25

**H**

**handling** [1] - 6:4
**hear** [2] - 10:22, 12:18
**heard** [3] - 12:14, 12:22, 16:22
**heart** [1] - 5:17
**held** [2] - 2:24, 9:25
**holder's** [1] - 20:3
**holding** [2] - 16:11, 16:24
**Honor** [18] - 2:17, 3:8, 7:6, 10:17, 12:23, 13:2, 15:11, 15:22, 17:1, 17:6, 17:19, 18:4, 18:23, 19:11, 21:10, 21:18, 21:23, 21:24
**HONORABLE** [1] - 1:11
**house** [2] - 8:17, 8:18

**I**

**immediate** [1] - 15:25
**impacts** [1] - 18:20
**important** [7] - 3:4, 13:1, 15:7, 15:10, 16:10, 16:23, 17:7
**included** [1] - 20:1
**inconsistent** [2] - 11:8, 17:8
**indicating** [1] - 7:2
**indicative** [2] - 21:16, 21:18
**indictment** [1] - 5:13
**ingredients** [1] - 16:24
**installment** [2] - 7:21
**issue** [9] - 4:25, 5:18, 6:2, 8:20, 9:16, 17:2, 19:17, 19:25, 21:20
**issued** [5] - 2:20, 6:23, 7:2, 10:12, 18:15
**issues** [2] - 17:2, 18:16
**issuing** [1] - 10:13
**itself** [3] - 3:6, 15:5, 15:7

**J**

**Judge** [1] - 2:5
**judge** [2] - 14:23, 15:1
**JUDGE** [1] - 1:12
**judgment** [7] - 2:11, 7:15, 11:8, 14:24, 15:17, 17:13, 18:16
**judicial** [2] - 8:25, 20:7

**K**

**keep** [1] - 18:18
**keeps** [1] - 13:2
**key** [1] - 11:17
**KLEIN** [1] - 1:18
**Kranz** [6] - 2:3, 2:13, 12:21, 12:24, 19:1, 20:14
**KRANZ** [11] - 1:20, 2:3, 12:23, 13:22, 13:25, 15:21, 16:16, 18:1, 18:11, 18:23, 21:23

**L**

**language** [4] - 11:15, 11:17, 15:22, 16:13
**last** [2] - 5:22, 9:7
**law** [11] - 2:6, 2:23, 3:3, 5:2, 8:3, 8:22, 9:24, 11:17, 18:6, 20:23
**laws** [1] - 7:11
**leap** [1] - 14:3
**leave** [1] - 10:21
**lender** [8] - 11:19, 11:21, 11:25, 12:2, 12:4, 12:10, 12:15, 16:1
**letter** [8] - 4:2, 4:6, 4:7, 4:18, 4:20, 4:21, 4:22, 4:24
**level** [2] - 9:18, 20:25
**lift** [1] - 6:15
**lifted** [3] - 6:17, 6:18, 7:3
**likely** [1] - 10:5
**limitations** [3] - 13:6, 14:9, 14:17
**limited** [1] - 15:12
**line** [3] - 2:14, 5:7, 20:7
**list** [1] - 5:21
**LLP** [2] - 1:14, 1:18
**loan** [4] - 7:20, 12:16, 13:8, 20:15
**look** [5] - 4:6, 4:8, 8:6, 10:4, 10:24
**looking** [1] - 20:8
**loses** [1] - 17:18
**lower** [1] - 18:4

**M**

**mail** [1] - 1:23
**main** [2] - 12:19, 17:1
**March** [1] - 4:19
**MARK** [1] - 1:20
**Mark** [3] - 2:3, 2:13, 12:24
**matter** [2] - 21:25, 22:6
**meet** [1] - 11:6
**mention** [1] - 4:3
**mentioned** [5] - 4:10, 17:6, 19:15, 19:19, 20:14
**merit** [1] - 11:1
**missed** [1] - 16:17
**missing** [1] - 16:23
**MONAHAN** [33] - 1:17, 2:2, 2:17, 2:19, 3:8, 3:12, 3:25, 4:5, 4:14, 4:17, 5:4, 5:19, 6:3, 6:11, 6:19, 6:22, 7:6, 7:11, 8:3, 8:16, 9:6, 9:10, 9:16, 10:1, 10:17, 10:19, 11:9, 11:15, 12:19, 19:2, 21:10, 21:18, 21:24
**Monahan** [4] - 2:2, 2:12, 2:15, 18:25

**Monday** [1] - 1:7
**money** [1] - 21:6
**months** [4] - 3:20, 12:14, 17:5, 17:15
**most** [3] - 8:19, 16:10, 16:23
**motion** [57] - 2:10, 3:15, 3:19, 4:1, 4:17, 4:21, 5:7, 5:9, 5:14, 5:16, 5:20, 5:21, 5:22, 5:25, 6:6, 6:12, 6:22, 7:1, 7:4, 7:5, 7:7, 7:10, 7:15, 8:19, 9:3, 9:4, 9:13, 9:15, 9:18, 9:23, 10:10, 10:15, 10:19, 11:12, 11:14, 11:22, 12:9, 12:10, 12:14, 15:2, 16:14, 16:19, 16:22, 17:16, 17:23, 19:12, 19:15, 19:18, 19:23, 20:1, 20:2, 20:3, 20:11, 20:16, 21:3, 21:8, 21:11
**motions** [1] - 7:7
**moved** [3] - 3:13, 3:22, 7:18

**N**

**N.A** [3] - 1:3, 1:15, 2:9
**necessary** [1] - 16:11
**never** [2] - 17:21, 19:7
**NEW** [1] - 1:1
**new** [9] - 7:11, 8:3, 8:22, 11:7, 13:7, 13:16, 14:18, 17:14, 18:6
**New** [6] - 1:5, 1:16, 1:20, 2:19, 7:12, 8:4, 11:17
**Newman** [2] - 19:5
**noteholder's** [1] - 19:18
**notice** [2] - 8:2, 18:14
**notify** [1] - 21:19
**nullified** [1] - 19:9
**number** [2] - 16:9

**O**

**oath** [1] - 3:25
**occurred** [2] - 2:22, 8:12
**OF** [3] - 1:1, 1:11, 22:4
**Official** [2] - 1:22, 22:12
**once** [1] - 5:25
**one** [4] - 7:7, 8:7, 16:9, 17:2
**opinion** [3] - 5:18, 11:2, 21:20
**opinions** [1] - 8:9
**opposed** [1] - 11:13
**oral** [2] - 2:10
**order** [6] - 6:23, 17:5, 17:14
**ordered** [4] - 3:10, 14:23, 15:1, 15:17
**orders** [1] - 19:9
**original** [3] - 9:7, 9:8, 9:23
**outcome** [1] - 6:24
**overturned** [2] - 2:23, 11:5
**owner** [2] - 13:8, 14:18

**P**

**p.m** [1] - 1:8
**paper** [1] - 20:9
**papers** [1] - 15:11
**parties** [1] - 12:8
**Parties** [1] - 2:1
**party** [3] - 5:9, 13:16, 21:19
**payable** [1] - 7:21

**payment** [1] - 15:25
**payments** [1] - 8:1
**pending** [7] - 5:12, 5:14, 5:20, 6:24, 7:1, 8:19, 9:6
**phone** [1] - 2:6
**place** [5] - 6:14, 6:17, 6:20, 7:3, 14:10
**plaintiff** [9] - 2:2, 2:12, 3:13, 3:17, 3:19, 3:22, 7:18, 15:2, 17:18
**Plaintiff** [2] - 1:4, 1:14
**Plaintiffs** [1] - 1:14
**plus** [1] - 21:5
**point** [8] - 13:18, 14:21, 15:8, 17:7, 17:12, 17:19, 19:14, 20:5
**points** [4] - 12:20, 13:1, 15:11, 19:2
**possibly** [1] - 15:6
**precedent** [1] - 10:23
**premotion** [3] - 4:2, 4:18, 4:24
**previously** [1] - 9:17
**principally** [2] - 4:9, 4:10
**principle** [1] - 8:18
**procedural** [1] - 18:12
**procedurally** [3] - 17:1, 17:16, 18:16
**proceed** [1] - 12:9
**proceeded** [1] - 6:7
**proceedings** [1] - 22:6
**Proceedings** [1] - 1:24
**produced** [1] - 1:25
**provide** [1] - 6:25
**providing** [1] - 7:1
**provision** [1] - 4:11
**purpose** [1] - 12:14
**put** [1] - 7:3

## Q

**questions** [1] - 17:9
**quote** [2] - 11:16, 19:16

## R

**raise** [4] - 9:12, 9:13, 9:14, 11:1
**raised** [4] - 5:1, 9:17, 9:21, 18:6
**RDR** [2] - 1:21, 22:11
**reacceleration** [1] - 20:18
**reach** [3] - 3:17, 16:11, 16:24
**reached** [1] - 12:5
**read** [2] - 15:13, 15:22
**really** [1] - 17:1
**reason** [6] - 3:15, 4:12, 5:5, 5:15, 7:5, 21:11
**reasonable** [1] - 17:13
**recently** [1] - 10:11
**reconsideration** [6] - 5:14, 5:17, 5:20, 5:25, 6:23, 7:4
**record** [1] - 22:6
**recorded** [1] - 1:24
**refer** [1] - 4:22
**referred** [1] - 4:23
**referring** [1] - 4:3
**refers** [2] - 11:17, 17:3
**refused** [3] - 3:16, 12:5, 12:9
**refusing** [1] - 12:13
**regarding** [1] - 2:10

**remain** [1] - 6:10
**remand** [1] - 21:20
**repeatedly** [2] - 13:10, 15:14
**Reporter** [3] - 1:21, 1:22, 22:12
**REPORTER** [1] - 22:4
**reporter** [1] - 2:13
**representing** [1] - 2:12
**requesting** [1] - 4:18
**require** [1] - 8:23
**required** [1] - 8:4
**resolved** [1] - 5:11
**response** [2] - 6:9, 19:1
**revert** [1] - 7:20
**revoke** [3] - 2:22, 10:7, 10:14
**revoked** [3] - 7:20, 16:2, 20:10
**revokes** [2] - 2:25, 7:13
**revoking** [1] - 2:24
**road** [1] - 21:5
**rule** [3] - 5:19, 8:5, 20:7
**Rule** [6] - 6:6, 6:12, 7:1, 17:12, 17:23, 17:24
**ruled** [3] - 10:3, 10:9, 13:5
**rules** [3] - 8:22, 11:3, 18:12
**ruling** [2] - 21:16, 21:19

## S

**schul** [2] - 8:17, 8:18
**Schuldov** [1] - 17:4
**SEAN** [1] - 1:17
**Sean** [2] - 2:2, 2:12
**second** [2] - 5:23, 10:8
**Second** [1] - 10:12
**Second Circuit** [12] - 5:23, 6:5, 6:7, 6:14, 10:3, 20:22, 20:24, 21:1, 21:2, 21:12, 21:19
**see** [5] - 8:7, 16:16, 16:17, 16:24
**send** [1] - 12:13
**sense** [2] - 8:20, 20:24
**separate** [2] - 13:7, 13:15
**set** [2] - 8:5, 8:10
**several** [2] - 3:20, 5:10
**Sharon** [1] - 2:3
**shifts** [1] - 12:1
**Shuldov** [1] - 20:23
**side** [1] - 5:21
**sign** [2] - 3:16, 3:18
**signed** [2] - 12:8, 20:4
**simply** [1] - 11:12
**single** [4] - 15:14, 15:21, 16:17, 20:9
**situation** [3] - 5:5, 5:11, 16:8
**situations** [1] - 5:8
**six** [2] - 14:10, 14:11
**six-year** [1] - 14:11
**so-ordered** [1] - 15:17
**solely** [1] - 15:19
**sometimes** [1] - 5:9
**sorry** [2] - 5:16, 9:8
**sorts** [1] - 8:8
**speaking** [1] - 12:24
**specific** [1] - 15:13
**specifically** [3] - 4:12, 11:16, 15:1
**spent** [1] - 15:10
**standard** [1] - 11:6

**standing** [1] - 2:23
**started** [4] - 6:3, 14:9, 14:17, 21:4
**state** [2] - 7:18, 14:23
**State** [1] - 7:12
**statement** [1] - 16:1
**states** [2] - 11:16, 19:5
**stating** [1] - 2:20
**status** [1] - 6:5
**statute** [3] - 13:6, 14:9, 14:17
**stay** [9] - 6:1, 6:10, 6:14, 6:15, 6:16, 6:20, 7:2, 7:5, 7:7
**stayed** [3] - 5:14, 5:22, 6:24
**staying** [1] - 6:23
**stenography** [1] - 1:24
**still** [6] - 6:1, 6:16, 10:13, 13:23, 13:24, 18:2
**stipulation** [15] - 3:10, 3:16, 3:18, 3:20, 12:13, 14:22, 14:25, 15:17, 16:23, 19:18, 19:23, 19:24, 20:4, 20:12, 20:15
**stipulations** [1] - 12:8
**Street** [1] - 1:15
**strict** [1] - 8:5
**subsequent** [1] - 10:10
**sufficient** [1] - 2:21
**sufficiently** [1] - 19:20
**Suite** [1] - 1:16
**summarize** [1] - 20:21
**summary** [3] - 7:15, 14:24, 15:17
**support** [1] - 7:15
**supposed** [4] - 10:24, 17:5, 18:13
**Supreme** [3] - 9:24, 10:1, 11:4
**SUSLOVICH** [1] - 1:18
**sworn** [1] - 13:7

## T

**talks** [1] - 16:14
**technically** [1] - 21:8
**TELEPHONE** [1] - 1:11
**Telephone** [1] - 1:22
**telephone** [1] - 2:1
**terms** [2] - 4:24, 8:14
**test** [2] - 8:15, 8:17
**therefore** [2] - 6:13, 7:19
**Third** [1] - 10:10
**timeframe** [1] - 14:11
**timely** [3] - 4:23, 7:22, 20:19
**timing** [4] - 5:4, 12:1, 13:5, 13:6
**today** [1] - 2:9
**today's** [1] - 2:8
**took** [1] - 14:10
**transcript** [1] - 22:5
**Transcript** [1] - 1:25
**TRANSCRIPT** [1] - 1:11
**Transcription** [1] - 1:25
**triggered** [1] - 3:21
**true** [1] - 5:1
**trying** [2] - 5:6, 20:6
**two** [6] - 12:25, 15:10, 15:11, 16:9, 16:10, 16:23

| U |
|---|
| **under** [10] - 3:23, 3:25, 5:19, 7:11, 8:3, 8:14, 8:16, 8:17, 12:6, 19:5 |
| **United States** [3] - 1:1, 1:5, 1:12 |
| **up** [2] - 20:22, 20:24 |
| **update** [3] - 6:5, 6:25, 7:1 |

| V |
|---|
| **vacate** [1] - 2:10 |
| **vacated** [1] - 8:23 |
| **valid** [1] - 10:25 |
| **via** [1] - 2:1 |
| **view** [1] - 8:13 |
| **violate** [1] - 11:3 |
| **voluntarily** [7] - 7:19, 8:11, 9:19, 14:5, 15:2, 16:6, 19:6 |
| **voluntary** [33] - 3:13, 7:12, 7:16, 7:24, 10:7, 10:13, 11:12, 13:12, 14:1, 14:12, 14:22, 14:25, 15:4, 15:15, 15:16, 15:19, 15:23, 16:5, 16:10, 16:14, 16:18, 16:19, 16:21, 19:3, 19:12, 19:15, 19:18, 19:23, 20:1, 20:2, 20:3, 20:11 |

| W |
|---|
| **waiting** [1] - 11:22 |
| **wasted** [1] - 21:5 |
| **Watson** [1] - 2:7 |
| **week** [1] - 10:11 |
| **West** [1] - 1:15 |
| **WHEREUPON** [1] - 21:25 |
| **whole** [2] - 18:11, 20:5 |
| **willing** [1] - 3:18 |
| **wished** [1] - 12:4 |
| **withdraw** [5] - 14:3, 16:7, 19:4, 19:10, 19:13 |
| **withdrawal** [5] - 14:1, 15:6, 15:7, 19:3, 20:15 |
| **withdrawing** [4] - 14:5, 14:6, 15:2, 19:9 |
| **withdrawn** [7] - 13:12, 14:12, 14:15, 15:5, 15:7, 19:7, 20:18 |
| **withdraws** [2] - 15:23, 20:12 |
| **withdrew** [6] - 14:13, 14:24, 16:19, 16:21, 16:22, 20:15 |
| **wondering** [1] - 4:22 |
| **words** [4] - 3:4, 5:25, 14:9, 16:3 |

| Y |
|---|
| **year** [9] - 4:13, 4:16, 4:25, 9:7, 13:8, 13:16, 14:11, 14:18, 21:5 |
| **years** [2] - 5:10, 14:10 |
| **YORK** [1] - 1:1 |
| **York** [8] - 1:5, 1:16, 1:20, 2:19, 7:12, 8:4, 11:17 |

| Z |
|---|
| **ZISMAN** [1] - 1:8 |

**Zisman** [4] - 1:19, 2:4, 2:9
**Zismans** [1] - 7:25

| § |
|---|
| **§60(b** [4] - 4:6, 21:8, 21:11, 21:14 |
| **§60(b)(1** [1] - 3:24 |
| **§60(b)(6** [3] - 3:24, 4:12, 5:6 |